O’NIELL, Chief Justice.
 

 On the 19th of August, 1907, A. P. Moresi bought from William L. McFarlain, for $2,000 cash, seven acres of land, in which the plaintiffs in this suit are claiming an interest. On the same day Moresi acquired from McFarlain an oil lease on other lands of McFarlain, which lease, however, is not involved in this suit. On the same day Moresi signed an instrument which he called “Recognition of Interest,” — on which this suit is founded, — thus:
 

 
 *935
 
 “State of Louisiana
 

 “Parish of Calcasieu
 

 “Recognition of Interest
 

 “I, A. P. Moresi, a resident of the Parish of Iberia, State of Louisiana, do hereby state that I have this day purchased from' William Lee McFarlain, of the Parish of Acadia, State of Louisiana, Seven (7) acres of land, being a part of Lot numbered Three (3) in Section Forty-one (41) in Township Nine (9) South, Range Two (2) West, of the Louisiana Meridian, situated in the Parish of Acadia, in said State, and fully described in the warranty deed filed for record on this day, and that I have leased this day from the said William L. Mc-Farlain Lots numbered Four (4) and Five (5), except the earthern tanks and buildings thereon, and being a part of said Section Forty-one (41), and also Twenty (20) acres in the Northeast corner of Lot Four (4) of Section Thirty-eight (38) in said township and range, and that the following named persons have the following interest in said property:
 

 “A. P. Moresi an undivided interest therein;
 

 “S. A. Moresi an undivided %i interest therein;
 

 “A. D. Moresi an undivided interest therein;
 

 “Arthur Schexnayder an undivided %i interest therein;
 

 “Jules Maritzky an undivided %i interest therein;
 

 “Ike Maritzky an undivided
 
 %i
 
 interest therein; and that said named persons have paid their pro rata share and portion of said purchase price, and when so requested I will execute an act of transfer conveying to them or their assigns their respective interest in said premises.
 

 “Witness my hand at Jennings, Louisiana, this 19th day of August, 1907, in the presence of the undersigned lawful witnesses.
 

 “[Signed] A. P. Moresi”
 

 “Witnesses:
 

 “[Signed] David H. Livingston
 

 “[Signed] J. H. Heinen.”
 

 A. P. Moresi died, intestate, on the 26th of March, 1936. His widow and two daughters, who are his only heirs, are the defendants in this suit.
 

 It is admitted that the name S. A. Moresi, in the instrument which we have copied, was intended, for L. A. Moresi. He and Jules and Ike Maritzky died, intestate. Their heirs, and A. D. Moresi, are the plaintiffs in this suit. Arthur Schexnayder did not join in the suit. The instrument on which the plaintiffs are suing, and which we have copied, was obtained by A. D. Moresi from Arthur Schexnayder in November, 1936; that is to say, about eight months after A. P. Moresi died. A. D. Moresi had the instrument recorded in the conveyance records of Acadia Parish on December 1, 1936; and thereafter he had the instrument attested by the two witnesses, David H. Livingston and J. H. Heinen, and again had it recorded, on March 15, 1937. The instrument was never recorded before December 1, 1936. It is admitted that it be^rs the genuine signature of A. P. Moresi.
 

 
 *937
 
 The plaintiffs, haying made demand upon the widow and heirs of A. P. Moresi, to be recognized as joint owners of the 7 acres of land, brought this suit against them, praying to be decreed the owners of the undivided interests in the land, as set forth in the so-called “Recognition of Interest,” and to have the defendants ordered to execute a conveyance to them for their interests, respectively, within a time to be specified in the judgment, or, in default thereof, to have the judgment stand in lieu of such conveyance. The plaintiffs prayed also for an accounting of any and all revenues that A. P. Moresi or his widow and heirs might have received from the seven acres of land, and for their share thereof.
 

 In defense of the suit, the defendants set up and are yet urging two pleas, which we excerpt from their brief, thus:
 

 (a) The contract was not accepted by or delivered to the plaintiffs or their ancestors; was, therefore, incomplete and no contract at all; or, at most, constituted an unaccepted offer or proposal, which, under article 1810 of the Civil Code, could not be enforced against the heirs of A. P. Moresi.
 

 (b) Alternatively, if the contract was complete and at one time enforceable, that right prescribed in ten years under article 3544 of the Civil Code.
 

 The judge of the district court, after hearing the evidence and the facts which were agreed to by the parties, overruled the defendants’ pleas, and gave judgment for the plaintiffs. The defendants are appealing from the decision.
 

 The appellants’ principal plea or defense is founded upon the idea that the instrument sued on, called “Recognition of Interest,” was only an executory contract, — such as an offer to sell. Article 1810 of the Civil Code refers only to such contracts, thus: “If the party making the offer, die before it is accepted, or [if] ' he to whom it is made die before he has given his assent, the representatives of neither party are bound, nor can they bind the survivor.”
 

 Our opinion, however, is that the so-called “Recognition of Interest” was not merely an executory contract, or merely an offer on the part of A. P. Moresi to convey to the other parties named in the instrument the interests which they were said to have in the seven acres of land. In Ballentine’s Law Dictionary, the definition of “executory contract of sale” is taken ■ from 23 R.C.L. 1346, thus: “A contract of sale is executory when there remains something to be done, the performance of which is a condition precedent to the transfer of the property.”
 

 The appellants lay great stréss upon the concluding paragraph of the instrument signed by A. P. Moresi, in which he declared that, when requested so to do, he would execute an act of transfer conveying to the persons named in the instrument, as the co-owners with him, their interest in the property. But that expression did not mean that an act of transfer by A. P. Moresi to the co-owners named in the instrument would be essential to the joint ownership which was acknowledged in the instrument. A. P. Moresi acknowledged in the instrument, not only that each of the other parties
 
 *939
 
 named in the instrument owned the interest stated, but also that he himself owned only the remaining %i interest in the 7 acres of land. He acknowledged also that each of the persons named as being co-owners with h-im had paid to McFarlain his — the co-owner’s — proportionate share of the price for which all of them jointly had bought the land; and hence he, A.’ P. Moresi, acknowledged that he had paid to McFarlain only his, A. P. Moresi’s, share, or 46i, of the price for which he and the other persons named in the instrument had bought the land from McFarlain. The cases cited by the appellants on this subject are cases in which the contract in question was, plainly, only an offer or promise to sell, at a certain price to be paid, or on certain conditions to be fulfilled by the party to whom the offer or promise was made. The cases cited are Bennett v. Fuller, 29 La.Ann. 663; Broadwell v. Raines, 34 La.Ann. 677; Thompson v. Duson, 40 La.Ann. 712, 5 So. 58; and Trichel v. Home Insurance Co., 155 La. 459, 99 So. 403. In the latter case the court qualified its pronouncement in a way that fits this case exactly, — thus [page 404]:
 

 “* * * and our conclusion is that any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only a confirmation of the first, and not indispensable for the transfer of title.”
 

 The instrument on which this suit is founded is neither a sale nor an offer to sell; it does not purport to be a transfer of title, or a promise on the part of A. P. Moresi to transfer title from him to the other persons named in the instrument. The instrument is merely an acknowledgment by A. P. Moresi that be bought the land for himself and as the agent for the other persons named in the instrument, and that they paid the price in proportion to the interests which they acquired, and hence that they all owned the property jointly and in the proportions stated in the instrument. A. P. Moresi’s expression of willingness to execute an act of transfer if or when requested so to do was deemed proper because the title apparently stood in his name; but this expression of willingness to execute an act of transfer was not hampered with any condition, or coupled with any obligation to be performed _ by any one who might request an act of transfer. The instrument is more of the character of a counter letter than of any other instrument that has been suggested. It is pointed out in the brief for the appellees that the agency of A. P. Moresi, which was not disclosed in the sale made to him by McFarlain, was what the French jurists and commentators call prétenom, — meaning one who lends his name. Spiers & Surenne’s French Pronouncing Dictionary (1867); Heath’s Standard French and English Dictionary; Baudry-Lacantinerie, vol. XXIV, p. 465, no. 880.
 

 The alternative plea of the appellants, that, if the instrument sued on did originally represent a complete contract, and was an enforceable obligation, the right to enforce it became barred by the prescrip
 
 *941
 
 tion of ten years under article 3544 of the Civil Code, is based upon the contention that this suit is only a personal action,— not a real action. The article provides that all personal actions, except those for which a period of prescription is theretofore especially provided in the code, are barred by the prescription of ten years. It is argued for the appellants that this suit is a personal action because the plaintiffs have so characterized it by asking in their petition for specific enforcement of the offer of A. P. Moresi to execute an instrument of transfer to the other persons named in the instrument sued on, or to their assigns, when requested so to do. But the plaintiffs, in their petition, did not pray merely for specific enforcement of A. P. Moresi’s expression of willingness to give an act of conveyance to the other persons named in the instrument sued on, or to their assigns, whenever requested so to do. The plaintiffs prayed, primarily, for a judgment in their favor and against the defendants, “decreeing petitioners to be the owners of the undivided interests specified” in the instrument sued on, “in and to the land described” therein. The subsequent prayer for specific enforcement of the offer of A. P. Moresi to execute an act of transfer did not convert the real action into a personal action. In fact this additional prayer was unnecessary.
 

 A suit in which the plaintiff asks to be decreed the owner of real estate which is claimed by the defendant, and the title to which is on record in the name of the defendant, — the suit being founded upon a written acknowledgment by the defendant that the property was bought by him as the agent for the plantiff, and was paid for by the plaintiff and actually belongs to him, — is not a personal action, but a real action, and is not barred by the prescription of ten years under article 3544 of the Civil Code. Judson v. Connolly, 4 La.Ann. 169; Mussina v. Alling, 11 La.Ann. 568; Da Ponte v. Ogden, 161 La. 378, 108 So. 777.
 

 In Judson v. Connolly, the plaintiff, Judson, as administrator of the Succession of Felix Connolly, sued to have certain real estate standing on record in the defendant’s name decreed to be in fact the property of the Succession of Felix Connolly, and to have the property delivered to the plaintiff as administrator. The suit was founded upon certain judicial declarations made by the defendant, in a suit in which she was one of the plaintiffs, namely, Connolly et al. v. Autenrieth et al., 4 La.Ann. 162. The defendant in Judson v. Connolly pleaded that the action to enforce her judicial declaration was only a personal action and hence was barred by the prescription of ten years under article 3508 of the Civil Code of 1825,- — of which article 3544 of the revision of 1870 is an exact counterpart. In overruling the plea of prescription, the court said:
 

 “It is alleged that this is a personal action ; that more than ten years have elapsed since Sarah Connolly received from the syndic of Hoskins a title to the property claimed, and that under art. 3508, C.C. [now article 3544] the action is prescribed. * * *
 

 “The prayer of the petition is, that the immovable property therein described be decreed to belong to the succession of
 
 *943
 
 Felix' Connolly, and that it be delivered to its administrator. This is clearly a real action, unaffected by the prescription of ten years.”
 

 In Mussina v. Alling, 11 La.Ann. 568, it was said:
 

 “An action for the revendication of immovables is a real action, and an action to compel a conveyance of lands falls within this category.”
 

 The case of Da Ponte v. Ogden, 161 La. 378, 108 So. 777, 'was a suit to recover from the defendants, and to compel them to execute a title for, an undivided one-sixth interest in certain lands-in Hardin County, Texas. The plaintiffs prayed also for an accounting of whatever money was received by the defendants in the way of royalties from oil leases on the land. The suit was founded upon a letter written to the plaintiff by the agent of the defendants, — thus [page 779]:
 

 “Confirming our conversation of 18th inst., I hereby acknowledge that you are the owner of a one-sixth undivided interest in sundry tracts of land in Hardin county, Tex., which were recovered from various defendants by Marie Ogden et al. by judgment rendered in county court of Galveston county, Tex.
 

 "I will make deed to your interest in these lands as soon as I can hear from Mr. H. C. Mayer, of' Galveston, to whom I shall be obliged to write for an exact description of the various tracts ánd nümbers of lots in the Saratoga town site and date of judgment.” ■
 

 The defendants pleaded in the Supreme Court 'that Da Ponte’s suit was a personal action and hence barred by the prescription of ten years under article 3544 of the Civil Code. In rejecting the plea the court said:
 

 “The final defense to the suit is a plea of prescription of ten years filed in this court.
 

 “This plea is based on article 3544 of the Civil Code, which establishes a prescription of ten years for all personal actions' in general.
 

 “In our opinion, the pleaded prescription is not applicable.
 

 “The error on which the plea is founded is in assuming that this is wholly and exclusively a personal action.
 

 ******
 

 “It is a real action in so far as it seeks to recover an undivided interest in the lands and to compel defendants to execute title. It is perspnal in so far as it calls on defendants to account for and pay over one-sixth of the royalties received from said land.”
 

 Adverting now to what the French jurists and commentators call “préte-nom,” our attention is directed to Carpentier du Saint, Repertoire du Droit Francais, Vol. 2, p. 408, verbo Action Personnelle, Reele et Mixte; where the author gives a list of the real actions, numbered 35 to 38, and, under the latter number; says that “the action having for its object a decree that the possessor of an immovable is only the prétenom” is a real action.
 

 This suit has for.,its object a; decree that A. P..Moresi was only what the French
 
 *945
 
 call the préte-nom of the true owners of the seven acres of land in contest. Our conclusion is that the plea of prescription of ten years is not well founded.
 

 The judgment is affirmed.