434 So.2d 1131 (1983)
Walter Leroy WARD, III, et al.
v.
C.B. PENNINGTON, et al.
No. 82 CA 0669.
Court of Appeal of Louisiana, First Circuit.
May 31, 1983.
Writs Denied September 23, 1983.
*1132 Roger M. Fritchie and Chapman L. Sanford, Baton Rouge, for plaintiffs-appellants Walter Leroy Ward, III, Joy Gilbert Ward and Swan S. Ward.
Thomas H. Benton, Baton Rouge, for defendant-appellant Naomi Terry Ward.
Herschel L. Abbott, Jr., New Orleans, and J. Huntington Odom, Baton Rouge, for defendants-appellees C.B. Pennington, et al.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment sustaining exceptions of no cause of action and prescription and dismissing plaintiffs' suit.
Plaintiffs[1] filed suit on September 29, 1981, seeking recognition of an ownership interest in Mount Pleasant Plantation and for an accounting from the defendants with respect to sums realized from that property. Appellants base their claims on a letter, dated over 24 years prior to the filing of this suit, by C.B. Pennington, Sr. to W.L. Ward, Jr. and contend that the letter is a counter-letter translative, as between the parties, of an undivided one-half interest in and to immovable property. The letter is as follows:
 "April 2, 1957
Mr. W.L. Ward, Jr.
Baton Rouge, Louisiana
Dear Mr. Ward:
This will confirm our verbal agreement that you own an undivided one-half interest in that certain agreement to purchase Mt. Pleasant Plantation between Edward E. Brown, the seller, and myself and C.B. Pennington, Jr., a copy of which agreement is attached hereto.
Upon your request, I will execute a formal agreement setting forth your individual one-half interest.
 Very truly yours,
 C.B. Pennington
CBP:mj
Encl."
The purchase agreement referred to in the aforementioned letter was executed between Brown and the Penningtons in February, 1957. A formal act of sale was executed in May, 1957, whereby Mount Pleasant Plantation was transferred from Edward Brown to C.B. Pennington and C.B. Pennington, Jr.
Defendants filed peremptory exceptions of no cause of action, no right of action, and prescription of 10 years under LSA-C.C. art. 3544.
After a hearing on the exceptions, the trial court sustained the exceptions of no cause of action and prescription of 10 years and dismissed plaintiffs' suit.[2] Appellants *1133 contend that the trial court erred (1) in sustaining the exception of no cause of action and (2) in sustaining the exception of prescription.

NO CAUSE OF ACTION
In support of the contention that the trial court erred in sustaining the exception of no cause of action, appellants essentially assert that the document of April 2, 1957, is a counter-letter by which Walter Ward, Jr. obtained a one-half ownership interest in the binding agreement to purchase Mount Pleasant Plantation. Appellants further contend that the April 2 letter when coupled with the act of sale, alleged to have been executed by Pennington in a fiduciary capacity, gave Ward a one-half ownership interest in the property itself.
The first question presented is whether plaintiffs' petition states a cause of action for which relief may be granted. In order to sustain an exception of no cause of action, all allegations contained in plaintiffs' petition must be considered as true, and accepting them as true, the petition must fail to state a cause of action. Boyer v. St. Amant, 364 So.2d 1338 (La.App. 4th Cir.1978), writ refused, 365 So.2d 1108 (La. 1978); Lewis v. Kehoe Academy, 346 So.2d 289 (La.App. 4th Cir.1977); LSA-C.C.P. art. 931.[3] The exception of no cause of action raises the issue of whether the law affords a remedy to anyone for the complaint advanced by the plaintiff. Willis v. State, 212 So.2d 555 (La.App. 1st Cir.1968). Stated another way, the purpose of such an exception is to determine whether under the allegations of the petition, the law affords any remedy for the grievance complained of. Willis v. State, supra; Adserv Corp. v. Lincecum, 385 So.2d 432 (La.App. 1st Cir. 1980); Bamber Contractors, Inc. v. Henderson Bros., Inc., 345 So.2d 1212 (La.App. 1st Cir.1977).
In considering a petition against which an exception of no cause of action has been raised, every reasonable interpretation must be accorded its language in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence. Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La. 1975); Adserv Corp. v. Lincecum, supra.
Plaintiffs' claim of an ownership interest in Mount Pleasant Plantation is based on the April 2, 1957, letter[4] and the purchase agreement attached thereto which plaintiffs contend is a counter-letter as envisioned by LSA-C.C. art. 2239[5]. Although a counter-letter is not defined in the Civil Code, a relatively clear definition has developed in the jurisprudence. In Louis v. Garrison, 64 So.2d 254 (La.App. Orleans 1953) the court stated at page 257:
"The only mention of counter-letters in the LSA-Civil Code is to be found in Article 2239, which recites in part: "Counter letters can have no effect against creditors or bona fide purchasers; * * *." We have searched in vain for any codal or statutory definition of the term. In Karcher v. Karcher, 138 La. 288, 70 So. 228, 229, the Supreme Court, quoting Bouvier, defined a counter-letter as:

*1134 `"An agreement to reconvey where property has been passed by absolute deed with the intention that it shall serve as security only. A defeasance by a separate instrument." Bouvier.' [Emphasis by Supreme Court]
"Both 1 Bouvier's Law Dict., Rawle's Third Revision, page 814 and Black define the word `defeasance' as `an instrument which defeats the force or operation of some other deed or of an estate.'"
Black's Law Dictionary[6] defines counter-letter as:
"A species of instrument of defeasance common in the civil law. It is executed by a party who has taken a deed of property, absolute on its face, but intended as security for a loan of money, and by it he agrees to reconvey the property on payment of a specified sum. The two instruments, taken together, constitute what is known in Louisiana as an `antichresis' (q.v.)."
The only logical interpretation of the April 2, 1957, letter is that it reflects a confirmation of a verbal agreement that Ward was the owner of an undivided interest in the agreement to purchase Mount Pleasant Plantation. Further, that when Ward so requested, Pennington would execute a formal agreement (which we interpret to mean "written") with Ward setting forth their verbal agreement and, we assume, the terms, conditions, etc. This constitutes, at the most, a promise to sell resulting in either party having the right to enforce the agreement if an appropriate action is timely filed. Cf. Lambert v. Succession of DeHass, infra. Thus, the letter under these circumstances simply is not a legal counter-letter wherein title to immovable property, as between the parties (Ward and Pennington), passed.
Appellants contend that Peterson v. Moresi, 191 La. 932, 186 So. 737 (1939) contains a "strikingly similar agreement." We disagree. In Peterson, supra, Moresi purchased seven acres of land on August, 19, 1907, for $2,000 cash. On the same day, Moresi signed an instrument which he called "Recognition of Interest" as follows at 186 So. pp. 737, 738:
"State of Louisiana
"Parish of Calcasieu
"Recognition of Interest
"I, A.P. Moresi, a resident of the Parish of Iberia, State of Louisiana, do hereby state that I have this day purchased from William Lee McFarlain, of the Parish of Acadia, State of Louisiana, Seven (7) acres of land, being a part of Lot numbered Three (3) in Section Forty-one (41) in Township Nine (9) South, Range Two (2) West, of the Louisiana Meridian, situated in the Parish of Acadia, in said State, and fully described in the warranty deed filed for record on this day, and that I have leased this day from the said William L. McFarlain Lots numbered Four (4) and Five (5), except the earthern tanks and buildings thereon, and being a party of said Section Forty-One (41), and also Twenty (20) acres in the Northeast corner of Lot Four (4) of Section Thirty-eight (38) in said township and range, and that the following named persons have the following interest in said property:
"A.P. Moresi an undivided 4/21 interest therein;
"S.A. Moresi an undivided 4/21 interest therein;
"A.D. Moresi an undivided 4/21 interest therein;
"Arthur Schexnayder an undivided 1/21 interest therein;
"Jules Maritzky an undivided 5/21 interest therein;
"Ike Maritzky an undivided 3/21 interest therein; and that said named persons have paid their pro-rata share and portion of said purchase price, and when so requested I will execute an act of transfer conveying to them or their assigns their respective interest in said premises.
"Witness my hand at Jennings, Louisiana, this 19th day of August, 1907, in the presence of the undersigned lawful witnesses.
 "[Signed] A.P. Moresi"
"Witnesses: "[Signed] David H. Livingston "[Signed] J.H. Heinem."
*1135 Moresi died in 1936, and suit was thereafter filed by certain parties named in the "Recognition of Interest" instrument, seeking to be recognized as joint owners of the seven acres of land. The Supreme Court stated at 186 So. page 739:
"The instrument on which this suit is founded is neither a sale nor an offer to sell; it does not purport to be a transfer of title, or a promise on the part of A.P. Moresi to transfer title from him to the other persons named in the instrument. The instrument is merely an acknowledgment by A.P. Moresi that be (sic) bought the land for himself and as the agent for the other persons named in the instrument, and that they paid the price in proportion to the interests which they acquired, and hence that they all owned the property jointly and in the proportions stated in the instrument. A.P. Moresi's expression of willingness to execute an act of transfer if or when requested so to do was deemed proper because the title apparently stood in his name; but this expression of willingness to execute an act of transfer was not hampered with any condition, or coupled with any obligation to be performed by any one who might request an act of transfer. The instrument is more of the character of a counter letter than of any other instrument that has been suggested."
The factual differences in Peterson and the instant case are readily apparent:
(1) Moresi was the owner of the disputed property when the counter-letter was executed;
(2) An express acknowledgment of interest in a particular tract of land owned by Moresi at the time; and,
(3) An express acknowledgment that each party had paid their pro rata portions of the purchase price.
Therefore, the April 2 letter is not and could not have been a counter-letter translative of title (or in recognition of ownership) of immovable property because the immovable property was not owned by Pennington at the time of execution of the counter-letter.[7] However, we disagree with the trial court's reasoning that the letter was merely an "offer" obviously unaccepted by Ward. We do, however, approve the reasoning of the learned trial judge that the April 2 letter is not sufficient, on its own, to convey an ownership interest (i.e., a real right) in immovable property (Mount Pleasant Plantation).
The instant case is somewhat similar to Lambert v. Succession of DeHass, 271 So.2d 910 (La.App. 1st Cir.1972), although the instrument in the present case has fewer characteristics of a counter-letter than the instrument in Lambert.[8] In Lambert, a suit for partition by licitation was filed by a co-owner of immovable property, and subsequently certain intervenors filed an intervention claiming their father had an interest in the property by virtue of an instrument as follows at page 912:
"Sorrento, La.-February 23rd, 1942
"This is a receipt from Reginald Johnson in payment on a piece of property measuring 100 Ft. wide along Gravel Road Running West from Sorrento, and approximately 420 Ft. Deep.
"The property is described as being the N.W. Corner of the N.W. ¼ of S.E. ¼ Section 24-T10-3 Ein the town of Sorrento.

*1136 "The Price of said lot is $150.00-monthly payments are to be made until the full amount is paid.
 /s/ L.J. DeHass
 DE HASS-EBY LUMBER
 COMPANY
"Payments have been made as follows:

February 23rd $30.00
March 7th 30.00
March 16th 30.00
March 23rd 15.00
March 30th 20.00
April 8th 10.00
April 18th 10.00"

Judge Sartain, writing for this court, stated at pp. 913, 914:
"Considering the above facts and their relevancy to the instrument of February 23, 1942, and viewing the latter as favorably to intervenors' position as possible, we must conclude that the same is an agreement to sell. The weakness of the instrument itself is apparent. It is a receipt for money paid on the date it was signed by the purported vendor and on six subsequent dates. While no sacramental language is required in a sale, the intention to effect an immediate transfer of title is essential. This intention is negated by the testimony of all concerned to the effect that Mr. Johnson made repeated efforts to consummate the transaction by a more formal instrument. For one reason or another his efforts to do so, the last in 1946, were to no avail. On one occasion when another individual endeavored to purchase the property from him, he replied that he could not sell the property because `he (Johnson) had no bill of sale.'
"The law applicable to the facts presented in the case at bar is clearly set forth in Gibsland Supply Company, Inc. v. American Employers Insurance Company, 242 So.2d 310 (2nd La.App., 1970), writs refused, 257 La. 987, 244 So.2d 858 (1971), from which we quote:
`Appellant insurance company urges the sale "is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.' (La.C.C. Art. 2546) That article deals with the sale of movables or with a contract for the sale of land, the latter of which may be enforced between the parties. When applied to the sale of land, if in writing, it may give either the vendor or the vendee an action for specific performance, but ownership does not pass until such action is taken.
`In Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948), the Louisiana Supreme Court had this to say:
"The proposition advanced by plaintiff has been many times made and we find consistent rejection of it in a long line of authorities. In most of the adjudications, the party stressing the contention (that a promise to sell is a sale) placed much reliance on Article 2462 of the Civil Code which provides that `A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale,as to give either party the right to enforce specific performance of same.' But, in every case were the court has been faced with the question of determining ownership of the thing prior to the passage of title, it has consistently stated that the promise did not effect a transfer of ownership to the promisee."
(See cases cited)'
"While Mr. Johnson had a right to demand specific performance, he did not do so during the remaining twenty-three years of his life and intervenors did not endeavor to exercise this right until the instant suit was filed a year following their father's death.
"The right to demand specific performance is an equitable remedy afforded either the seller or purchaser. However, it is essential that the party desiring specific performance to such an agreement must judicially demand the same within a reasonable time or be deemed to have abandoned their right to do so. Port *1137 Arthur Towing Company v. Leveque, 247 So.2d 595 (3rd La.App., 1971), Joffrion v. Gumbel, 123 La. 391, 48 So. 1007 (1909); Schluter v. Gentilly Terrace Co., 164 La. 663, 114 So. 586 (1927); Davis v. McCain, 171 La. 1011, 132 So. 758 (1931); Powell v. Codifer and Bonnabel, Inc., 167 La. 97, 118 So. 817 (1928).
"Clearly the delay in seeking specific performance by Mr. Johnson for some twenty-three years must be construed as an abandonment by him of his rights under the document of February 23, 1943, and precludes his heirs (intervenors) from doing so now."
The trial court held, and we agree as follows:
"... plaintiffs ... have failed to plead in their petition, or to refer to, cite or disclose any instrument of title whatsoever which could in any way legitimate their claim to an ownership interest in Mount Pleasant Plantation. The April, 1957, letter is not sufficient, on its own, to convey an ownership interest in the plantation, and no other supportive facts have been plead in any way to constitute a cause of action."
Appellants contend that they are not asking for specific performance of the agreement in the April 2 letter, but for recognition of an ownership interest in immovable property and an accounting for the proceeds derived from the land. We fail to see how appellant can claim an ownership interest in the land without first requiring specific performance of the verbal agreement evidenced by the April 2 letter. Appellants' cause of action (based on the April 2 letter) could not be for specific performance of a purchase agreement because only the parties thereto (Pennington and Brown) would have had such a right or cause of action. Appellants' only cause of action would have been against Pennington for specific performance of a verbal agreement to transfer an interest in the purchase agreement executed between Pennington and Brown. Such a cause of action was not asserted in the instant case; the proceeding sub judice is one for recognition of a half ownership interest in immovable property (and accounting). The trial court was clearly correct in sustaining the exception of no cause of action. Any rights conferred by the April 2 letter are clearly not real rights as asserted by plaintiffs' petition.

FIDUCIARY RELATIONSHIP
Plaintiffs also claim that C.B. Pennington, Sr. was the fiduciary or agent of Mr. Ward.
An agent is defined as one who acts for or in the place of another, by authority from the latter. Craft v. Trahan, 351 So.2d 277 (La.App. 3rd Cir.1977), writ refused, 353 So.2d 1336 (La.1978); Hryhorchuk v. Smith, 379 So.2d 281 (La.App. 3rd Cir.1979), writ granted, 381 So.2d 1231 (La.1980), affirmed in part, reversed in part, and remanded at 390 So.2d 497 (La.1980), on remand, 412 So.2d 197 (La.App. 3rd Cir.1982); LSA-C.C. arts. 2985, 2986, 2992.
An agency relationship may be created by the parties thereto either expressly or by implication. AAA Tire & Export, Inc. v. Big Chief Truck, 385 So.2d 426 (La.App. 1st Cir.1980); Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973). An agency is created expressly by the written or oral agreement between the parties. AAA Tire & Export, Inc. v. Big Chief Truck, supra; Craft v. Trahan, supra. However, a mandate must be express and special when it relates to selling or buying property. East Bank Realty, Inc. v. Robert, 411 So.2d 500 (La.App. 1st Cir.1982); LSA-C.C. art. 2997.[9] Furthermore, such mandate must be in writing. East Bank Realty, Inc. v. Robert, supra.
*1138 In an action based on the existence of an agency relationship, such relationship must be clearly established. An agency relationship cannot be presumed. Patrick v. Patrick, 230 So.2d 759 (La.App. 2d Cir. 1970); Rebman v. Reed, 335 So.2d 37 (La. App. 4th Cir.1976), writ denied, 338 So.2d 699 (La.1976).
We fail to see how a fiduciary relationship existed in this case and plaintiffs have failed to provide any argument supporting the existence of such a relationship. We, therefore, find no merit in this contention.

PRESCRIPTION
In support of appellants' opposition to the trial court action sustaining the exception of prescription, they contend that the action is a real action, which is governed by the thirty year prescriptive period of LSA-C.C. 3548.
The trial court was of the opinion, and we agree, that:
"... all of these cases cited by plaintiffs in support of this proposition that this is a real action which was a thirty year prescriptive period may be distinguished for one reason or another from the instant suit. Peterson v. Moresi [191 La. 932] 186 So. 737 [La.1939], in particular, may be distinguished in that in the Peterson suit the suit was founded upon a written acknowledgement by the defendant that the property was purchased by him as the agent for the plaintiff, and was paid for by the plaintiff and actually belongs to the plaintiff. Here, suit is based upon a written acknowledgement by Mr. Pennington of an undivided one-half interest in an agreement to purchase. There is nothing within the corners of the written acknowledgement purporting to confirm ownership or property in Mr. Ward. Since the letter is dated April 2, 1957, the act of sale was passed on May 27, 1957, and suit was filed on September 29, 1981, more than 24 years later, all actions for an accounting and for a declaration of ownership have in the court's opinion prescribed."
Having previously determined that the April 2 letter did not qualify as a counter-letter effecting, as between the parties, a transfer of immovable property and that the trial court was correct in sustaining the exception of no cause of action, it is unnecessary to determine what prescriptive period applies. However, we have previously set forth that the April 2 letter does not confer a real right in and to immovable property and that this is not a suit for specific performance of an agreement to purchase. The suit, though not so styled, in effect seeks specific performance of an agreement to transfer an interest in a purchase agreement (which culminated in the acquisition of Mount Pleasant Plantation). Any rights which arose from this agreement were personal rights, and the applicable prescriptive period is ten years under LSA-C.C. art. 3544, if not otherwise abandoned.[10]
For the above and foregoing reasons, we affirm the judgment of the trial court sustaining the exceptions of no cause of action and prescription and dismissing appellants' suit at appellants' costs.
AFFIRMED.
NOTES
[1] Naomi Terry Ward, the widow of Walter Leroy Ward, Jr., was named as a defendant in the petition to assert any claims she might have in the cause of action. Naomi Terry Ward later intervened in the suit and insofar as this appeal is concerned, her interests are identical to those of plaintiffs.
[2] The trial court found that the exception of no right of action lacked merit because plaintiffs have an interest in the subject matter and are the proper parties to assert a cause of action, if one exists. This ruling was not appealed and, therefore, is not before this court.
[3] LSA-C.C.P. art. 931 provides as follows:

"On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.
"When the peremptory exception is pleaded in the trial court after the trial of the case, but prior to a submission for a decision, the plaintiff may introduce evidence in opposition thereto, but the defendant may introduce no evidence except to rebut that offered by plaintiff.
"No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action."
[4] The April 2, 1957, letter was attached to and made a part of the petition as Exhibit "C".
[5] LSA-C.C. art. 2239 provides as follows:

"Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [legitime]."
[6] Black's Law Dictionary, Fifth Edition 1979, by Henry Campbell Black, M.A.
[7] In dicta in Morgan v. Hathaway, 77 So.2d 169 (La.App. 1st Cir.1954) this court, quoting 17 Tul.L.R. 462, stated that "in order for a document to constitute a counter-letter, it is not necessary that it should be contemporaneous with the act attacked." However, to confer a real right, as opposed to a personal right, the counter-letter must be translative of title as between the parties at the time of execution; title to immovable property cannot be transferred by a party who has no title.
[8] In Lambert, the intervenors in a suit to effect a partition of immovable property, sought to enforce a purchase agreement executed between their father and Mr. DeHass. In the instant case, W.L. Ward, Jr. was not a party to the purchase agreement dated February, 1957. Appellants are in effect seeking to enforce a verbal agreement to convey an interest in a purchase agreement executed between Pennington and Brown.
[9] LSA-C.C. art. 2997 provides:

"Thus the power must be express and special for the following purposes:
To sell or to buy.
To incumber or hypothecate.
To accept or reject a succession.
To contract a loan or acknowledge a debt.
To draw or indorse bills of exchange or promissory notes.
To compromise or refer a matter to arbitration.
To make a transaction in matters of litigation; and in general where things to be done are not merely acts of administration, or such as facilitate such acts."
[10] This portion of our decision could also be grounded on the legal premise that whatever cause of action appellants might have had (whether personal, real or mixed) the 24 year delay by appellant in seeking relief should be construed as an abandonment of these rights. Cf. Lambert v. Succession of DeHass, supra; Davis v. McCain, 171 La. 1011, 132 So. 758 (1931); Hymel v. Old Homestead, Inc., 135 So.2d 685 (La.App. 4th Cir. 1961); Cf, however, Smith v. Bickley, 348 So.2d 757 (La.App. 1st Cir.1977) wherein it was held that an action for specific performance of a real estate contract is a real action and subject to thirty year prescription of LSA-C.C. art. 3548. It is difficult to reconcile the latter case with the Lambert, Davis and Hymel cases, supra. We have previously noted that the instant case involves an agreement to transfer an interest in a purchase agreement and is not a suit for specific performance of a purchase agreement or between an owner and prospective purchaser.