496 So.2d 473 (1986)
MARTIN FUEL DISTRIBUTORS, INC.
v.
TRANS GULF FUEL, INC.
No. 85 CA 0738.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
Writ Denied December 19, 1986.
Donald F. Harang, Larose, for plaintiff-appellee Martin Fuel Distributors, Inc.
Rader Jackson of Shushan, Meyer, Jackson, McPherson & Herzog, New Orleans, Edmond L. Deramee, Jr., Thibodaux, for defendant-appellant Trans Gulf Fuel, Inc.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
Defendant, Trans Gulf Fuel, Inc., appeals from a trial court judgment declaring certain lease amendments null and void.

*474 FACTS
The facts of this case are not in dispute.[1] Prior to August 30, 1933, L.E. Daviet & Company, Inc. owned the following described property:
1st. A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the right descending bank of Bayou Lafourche, at about 30 miles below the Town of Thibodaux, measuring one and one quarter (1¼) arpent front on said Bayou by forty (40) arpents in depth. Bounded above by lands of Leon Orgeron, and below by lands of E.C. Delaune, formerly, now of Farmers Trust & Savings Bank.
Being the same property which was acquired from Numa Allemand, see C.B. 62 folio 17, et seq.
2nd. A certain tract of land, situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche, at about 34 miles below the Town of Thibodaux, measuring two (2) arpents and six (6) feet in width, on the said Bayou Lafourche by a depth of forty (40) arpents bounded above by property of Lafourche Parish School Board (Larose High School) and Pierre Breaux and below by property of the Harvey Canal Co. (Intracoastal Canal) now or formerly, together with all the buildings and improvements etc. (See C.B. 50, folio 262) (Less 85 feet front by 40 arpents in depth sold to the Harvey Canal Land & Improvement Co. See C.B. 54 F. 137)
Also a stock of merchandise in the store situated on the property herein secondly described and merchandise in transit as well as all rights, open accounts, credits and actions belonging to L.E. Daviet & Company, Inc.
By act of sale dated August 30, 1933, L.E. Daviet & Company, Inc.[2] conveyed title to the above described property to L.E. Daviet and his wife, Alice Guidroz Daviet. The act of sale was recorded in COB 71, folio 383 in Lafourche Parish.
On June 15, 1944, L.E. Daviet leased the subject property to Southport Petroleum Company of Delaware for a term of fifteen years. The lease was recorded in COB 111, folio 475 in Lafourche Parish. Thereafter, the lease was amended to extend the lease term until June 14, 1974, and granted lessee the right to renew the lease for an additional fifteen years, commencing June 15, 1974, and ending June 14, 1989. The lease amendment was signed by Esso Standard Oil Company, successor of lessee, Southport Petroleum Company of Delaware, and by lessor, L.E. Daviet. The lease amendment was recorded in Lafourche Parish in COB 252, folio 237.
By act of donation, dated December 22, 1959, Alice Guidroz Daviet and L.E. Daviet conveyed the subject property to L.E. Daviet Company, a Louisiana partnership consisting of Leslie L. Daviet, Claude E. Daviet, Louis E. Daviet, Jr., and the Dominican Trust (a trust created by Alice Guidroz Daviet and L.E. Daviet). The act of donation was recorded in COB 261, folio 130 in Lafourche Parish. No articles of partnership were ever filed by L.E. Daviet Company.
By instrument filed November 17, 1965, Leslie L. Daviet, Claude E. Daviet, Louis E. Daviet, Jr. and the Dominican Trust gave L.E. Daviet, Sr. a power of attorney authorizing him to:
[A]ct for us and represent us in the management of all property owned by us, doing business as L.E. Daviet Company (partnership) and power is granted to said L.E. Daviet, Sr. to sell any of the property so owned by us jointly, and to buy property in our joint names, such property that may be sold or purchased to include real, personal and/or mixed property; giving and granting to said attorney full power and authority to do *475 and perform any and every act and thing he deems requisite or necessary to be done in the premises, in connection with the management of said partnership and/or sales and purchases of property for account of said partnership, as fully and to all intents and purposes as we might or could do if personally present at the doing thereof.
Without in any way limiting the generality of the foregoing, such power shall include:
1. The full power to delegate authority or to substitute another agent or attorney;
2. The power to sign checks on any bank account for the account of said partnership and to receive any payments due whatsoever for account of said partnership;
3. The power to sign leases, acts of sale, etc. for account of said partnership and/or the four foregoing individuals doing business together.
The power of attorney was recorded in Lafourche Parish in COB 344, folio 394.
On December 6, 1965, and December 22, 1965, L.E. Daviet and Humble Oil and Refining Company, successor of Esso Standard Oil Company, respectively, entered into a second amendment to the original lease agreement. L.E. Daviet, although authorized by a power of attorney, did not sign in a representative capacity and did not attach a copy of the power of attorney to the transaction. This lease amendment purported to release certain property from the original lease and the subsequent amendments. By this amendment, the lessee was also granted the right to renew the lease for an additional fifteen years, commencing June 15, 1989, and ending June 14, 2004. This lease amendment was recorded in Lafourche Parish on January 25, 1966, in COB 347, folio 435. It is this instrument which plaintiff, Martin Fuel Distributors, Inc., seeks to have declared null and void.
By act of sale dated February 24, 1971, L.E. Daviet Co. conveyed the subject property to Larry Dale Sauder and Donna M. Schutt Sauder. The act of sale was recorded on February 25, 1971, in COB 444, folio 163 in Lafourche Parish, together with three acts of power of attorney and a plat.[3] The act of sale provided:
All of which said property or portion of said property may be subject of a lease by L.E. Daviet to the Esso Standard Oil Co., dated June 15, 1944 and recorded in C.B. 111 Page 475, for the records of the clerk of Court, Parish of Lafourche and subject to additional agreements with Esso Standard Oil Co., dated December 22, 1965 and on April 15, 1959.
On April 25, 1979, the Sauders sold the subject property to Sauder Inventions, Inc. The act of sale was recorded in Lafourche Parish in COB 665, folio 499. The act of sale included the same language as quoted above and provided that the property may be subject to the original lease and the extensions of December 22, 1965 and April 15, 1959.
On October 14, 1981, Martin Fuel Distributors, Inc., plaintiff herein, purchased the subject property from Sauder Inventions, Inc. The act of sale was filed in Lafourche Parish on October 19, 1981, in COB 752, folio 108, and included the following language:
Being a portion of the tract of land referred to in Act of Sale from L.E. Daviet Co. to Larry Dale Sauder and Donna M. Schutt Sauder before J.J. Erny, Jr., Notary Public, on February 24, 1971, and duly recorded in C.B. 444, Folio 163, Entry Number 3333738 of the official records of the Parish of Lafourche, Louisiana.
Thereafter, on August 23, 1983, Exxon Corporation, as successor of Humble Oil and Refining Company, assigned and transferred all of its rights in and to the above described lease and subsequent amendments thereto to defendant, Trans Gulf Fuel, Inc. The act of assignment of the *476 lease was recorded in COB 834, folio 73 in Lafourche Parish.
On December 27, 1983, plaintiff filed suit for declaratory judgment, seeking to have the 1965 lease amendment, which granted an option to renew the lease for an additional fifteen-year term, commencing June 15, 1989, and ending June 14, 2004, declared null and void. Plaintiff also seeks to have the lease declared terminated as of June 14, 1989.
The trial court determined that the 1965 lease amendment was invalid at the time of its execution because L.E. Daviet, who signed the lease, did not own the property at the time and because, although he had a power of attorney from the owners of the property, he failed to disclose his agency status.
From this judgment, defendant appeals, assigning the following errors:
1. The Trial Judge erred when he held that the recorded Lease Amendment that forms the subject of this lawsuit is invalid and therefore unenforceable.
2. The Trial Judge erred when he did not hold that the Lease amendment in question had not been expressly ratified by the subsequent actions of the parties.
3. The Trial Judge erred when he failed to find that the public records clearly reflect the plain and true intention of all parties involved which would make the Lease Amendment binding on the land.
4. The Trial Judge further erred when he failed to hold that the Plaintiff's suit was not prescribed by the passage of ten years.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant contends that the trial court erred in finding that the 1965 lease amendment, executed by L.E. Daviet, to a lease on property owned by the L.E. Daviet Company was invalid and unenforceable. Defendants reason that when L.E. Daviet executed the 1965 lease amendment he was acting as agent of and was expressly authorized to do so by his principal, the L.E. Daviet Company.
Plaintiff, however, reasons that because L.E. Daviet did not disclose his agency status, the lease amendment is not valid.
An agent is one who acts for or in place of another by authority from the latter. LSA-C.C. art. 2985; Jackson v. Wal Mart Properties, Inc., 452 So.2d 409 (La.App. 3rd Cir.1984); Ward v. Pennington, 434 So.2d 1131 (La.App. 1st Cir.1983), writ denied, 438 So.2d 572 (La.1983). An agency relationship may be created by the parties thereto either expressly or by implication. AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So.2d 426 (La.App. 1st Cir.1980). Actual authority exists when the principal grants authority to the agent by express or implied consent. Apparent authority exists when the principal acts in such a way that a third person is justified in assuming that the agent has authority to act for the principal, even though the principal may not have granted the authority to the agent. The principal may be bound for the acts of an agent who acts with actual or apparent authority. Jackson v. Wal Mart Properties, Inc., supra; Thompson v. Great Midwest Fur Company, 395 So.2d 840 (La.App. 1st Cir.1981).
In an action based on the existence of an agency relationship, such relationship must be clearly established. An agency relationship cannot be presumed. Ward v. Pennington, supra.
In the instant case, L.E. Daviet was given actual authority to act on behalf of his principal the L.E. Daviet Company. The power of attorney executed by partners in the L.E. Daviet Company was filed of record on November 17, 1965, more than a month before the lease amendment at issue was executed. Further, plaintiff and its successors in title do not deny that L.E. Daviet had actual authority to act on behalf of his principal or that the power of attorney was recorded, but merely that his failure to sign the lease in a representative capacity in some way invalidates the lease.
*477 In Port Arthur Towing Company v. Owens-Illinois, Inc., 352 F.Supp. 392 (W.D.La.1972), the court correctly and succinctly set forth the law with regard to recorded leases[4] as follows at p. 398:
A recorded lease is an encumbrance, a burden upon the property that follows it into the hands of the purchaser. A vendee who takes real property by transfer pending a recorded lease takes it subject to the encumbrance and has no right to use it until the lease expires. This is so because the right to the use of the property has been alienated prior to his acquisition. La. Civil Code Article 2733. The case law of Louisiana is uniform to the effect that purchasers of immovable property are not bound by prior leases unless such leases have been recorded. Did the recordations here present suffice to give notice to defendant of the assignment of the lease? The laws of registry are deeply imbedded in Louisiana jurisprudence. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). A purchaser dealing with immovable property need only look to the public records. If no adverse claims appear, he may take good title to the property, despite any actual knowledge of unrecorded claims. Quatre Parish Co. v. Beauregard Parish School Board, 220 La. 592, 57 So.2d 197 (1952).
A particularly significant corollary to the Louisiana law of recordation is that when there appears on the face of the record such language that should give notice to a potential purchaser that his title is not free from all prior burdens, he must make further inquiry outside the record. Speaking for the Court in Pittsburgh Plate Glass Co. v. Woodcock, 150 So.2d 660 (La.App.1963), Judge Hood concisely stated the rule: "It also is settled that all persons have constructive notice of the existence and contents of recorded instruments affecting immovable property, and that where an instrument contains language which fairly puts a purchaser on inquiry as to the title of the property which he intends to buy, and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts, he is to be considered as having bought at his own risk and peril. Id. at 663. See also Neblett v. Placid Oil Co., 257 So.2d 167 (La.App.1971); Wells v. Joseph, 234 La. 780, 101 So.2d 667 (1958); Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1950); Brown v. Johnson, 11 So.2d 713 (La.App.1942)."
Furthermore, when a deed makes reference to the vendor's deed of acquisition and prior links in the chain of title, a title examiner is required to examine these acts in determining the status of the title. Cf. Lee v. Long, 166 La. 1084, 118 So. 320 (1928); Wood v. Morvant, 321 So.2d 914 (La.App. 1st Cir.1975).
In the instant case, the original lease was filed of record on June 15, 1944. Its original term was fifteen years with the option to renew granted to the lessee for an additional fifteen-year term. Thereafter, on April 15 and April 30, 1959, respectively, lessee and lessor amended the original lease, exercising the option to renew the lease until June 14, 1974, and granting an additional option to renew to the lessee for a further fifteen-year term. This lease amendment was also filed of record. Thereafter, L.E. Daviet transferred ownership of the property to a company formed by his children and was given a power of attorney specifically authorizing him to sign leases on behalf of the L.E. Daviet Company. Both documents were filed of record.
On December 6 and 23, 1965, lessor and lessee, respectively, entered into another lease amendment, wherein lessee exercised its option to renew the lease until June 14, *478 1989, and was granted an option to renew the lease for an additional fifteen-year term. This lease was signed by L.E. Daviet, who although authorized by the L.E. Daviet Company to execute the document, did not sign in a representative capacity. The document, like all the other documents affecting the property, was filed of record. Thereafter, in 1981, plaintiff acquired the property, and the deed of acquisition referred to the deed from L.E. Daviet Company to Dale Sauder and Donna M. Sauder of February 24, 1971, which contained the stipulation subjecting a portion of the property to the lease and amendments thereto.
The conclusion is certain and unequivocal that when plaintiff purchased the property in 1981, a cursory examination of the public records would have revealed that (1) under the option clauses lessee and/or lessee's assignees could potentially renew the lease until the year 2004; (2) that L.E. Daviet had actual authority, as evidenced by a recorded power of attorney, to execute the lease amendments on behalf of the record owner the L.E. Daviet Company; (3) that the property had been transferred in 1971 and 1979 subject to the original lease and subsequent lease amendments; and (4) that the lease was in effect after the initial fifteen-year term had expired. Given this set of significant facts, we hold that Martin Fuel Distributors, Inc. had knowledge of these recorded instruments affecting the property and that the language in these documents fairly put them on notice that the property was potentially burdened with a currently effective lease. Martin Fuel Distributors, Inc. was obligated to avail itself of the means and facilities at hand to obtain knowledge of the true facts. See Port Arthur Towing Company v. Owens-Illinois, Inc., supra.
Therefore, we find that L.E. Daviet had actual authority to bind, that he did, in fact, bind his principal to the 1965 lease amendments and that all subsequent purchasers including Martin Fuel Distributors, Inc. purchased the property subject to the original lease and all subsequent amendments, including the 1965 lease amendment. Accordingly, we hold that the trial court erred in finding that the lease amendment was invalid and unenforceable.
Because of our findings on Assignment of Error No. 1, we find it unnecessary to address the other issues raised.

CONCLUSION
For the above reasons, the judgment of the trial court declaring the 1965 lease amendment invalid and unenforceable is reversed. Costs are assessed against plaintiff, Martin Fuel Distributors, Inc.
REVERSED.
NOTES
[1] The facts of the instant case were stipulated by the parties by a joint stipulation filed in the trial court on June 27, 1985.
[2] L.E. Daviet & Company, Inc. was represented in the transaction by Richard F. Lorio, duly appointed liquidator of L.E. Daviet & Company, Inc.
[3] Beatrice Maria Daviet, Leolie L. Daviet, and Claude E. Daviet, by acts of power of attorney, appointed Louis E. Daviet, Jr., to act on their behalf in the sale of the subject property.
[4] Recently in Phillips v. Parker, 483 So.2d 972 (La.1986), the Louisiana Supreme Court expounded on the Louisiana public records doctrine and determined that the "primary concern of the public records doctrine is the protection of third persons against unrecorded interests." Because the claim of plaintiff's ancestor-in-title was recorded in Phillips v. Parker, supra, the Supreme Court determined that the public records doctrine had little applicability.