566 So.2d 1136 (1990)
COMMERCIAL NATIONAL BANK IN SHREVEPORT, Plaintiff-Appellee,
v.
AUDUBON MEADOW PARTNERSHIP, et al., Defendants-Appellants.
No. 21634-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
*1137 Cook, Yancey, King & Galloway by Bernard S. Johnson and Lance Paul Havener, Shreveport, for plaintiff-appellee.
Turner, Young & Hebbler by Emile L. Turner, Jr. and Wilbur J. "Bill" Babin, Jr., New Orleans, for Robert Lucien, Sr. appellant-plaintiff in reconvention.
Before HALL, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Robert L. Lucien, Sr. (Lucien) appeals the dismissal of his reconventional demand via an exception of no cause of action. For the reasons hereinafter expressed, we affirm the judgment of the district court.

FACTS
On August 30, 1984, William K. Dupree, II (Dupree) and Lucien signed separate continuing guaranty agreements, each securing debts of up to Two Million Dollars owed, or to be owed, by Audubon Meadow Partnership (Audubon) to Commercial National Bank (CNB). The following day Audubon, acting through Dupree, its general managing partner, executed a collateral mortgage on immovable property, thus further ensuring partnership obligations to CNB. Thereafter, as reflected by a promissory note dated June 20, 1986, Audubon borrowed $713,140 from CNB, apparently for use in a real estate venture involving subdivision improvements and manufactured homes.
Timely satisfaction of the note, due on December 18, 1986 in a single payment, did not occur. Consequently, CNB filed suit against Audubon, Dupree, and Lucien, requesting judgment for the amount owed as well as recognition of its mortgage. By mid-summer 1987, issue had been joined by all defendants. Nearly a year later, in May 1988, Lucien received leave of court to supplement and amend his original answer and bring a reconventional demand against CNB.
*1138 In the reconventional demand, Lucien asserts that CNB refused Audubon's initial loan request presented by Dupree. However, upon the application being brokered through Blaylock Investment Corporation, an entity having a significant business relationship with and later purchased by CNB, the loan was forthcoming. Furthermore, CNB allegedly disregarded sound banking procedures involving commercial real estate loans in failing both to receive an appraisal of the unimproved land and to investigate the worthiness of the loan, despite knowing that Dupree's assets would not support such an enterprise. Also, it is contended that in violation of a duty owed to guarantors, CNB neglected to investigate the feasibility of the project and its ability to generate funds sufficient for the loan's repayment. It is averred that, rather than rely on the borrower's representations, an institution experienced in commercial real estate development transactions, such as CNB, should use its resources to ascertain the reasonableness of a loan. Finally, CNB's negligence supposedly allowed part of its collateral, a letter of credit, to lapse.
Besides the foregoing errors and omissions which allegedly caused damages, Lucien contends that, notwithstanding the construction loan agreement, CNB failed to receive a statement of total cost prior to the disbursement of funds. Similarly, the bank did not monitor the project yet advanced additional funds, even though it should have known the undertaking could not be completed within the loan limit.
CNB responded to the reconventional demand with an exception of no cause of action, later sustained. Following a failure to amend the pleadings within the delays accorded by the trial court, dismissal of the suit occurred. This appeal then ensued.
Lucien now argues that Louisiana law, particularly LSA-C.C. Art. 1901 (now Art. 1983) and LSA-R.S. 10:1-203, mandates the good faith performance of contracts, and that the petition sufficiently alleged factually that the guarantors did not receive such implementation. Essentially, there exists, it is posited, an unfulfilled duty on the bank's part to act in good faith.

DISCUSSION
Of course, the legal principles regarding an exception of no cause of action are well settled and were aptly summarized by this court in McIntyre v. McIntyre, 519 So.2d 317, 319 (La.App. 2d Cir.1988), as follows:
The peremptory exception of no cause of action is a procedural device to test whether, under the allegations of the petition, the law affords any remedy for grievance complained of. Ward v. Pennington, 434 So.2d 1131 (La.App. 1st Cir. 1983), writ denied, 438 So.2d 572, 576 (La.1983). As already noted, the exception is triable solely on the face of the petition and any attached documents. North Central Util. v. E. Columbia Water Dist., supra [449 So.2d 1186 (La.App. 2d Cir.1984)]; Robinson v. North Amer. Royalties, 470 So.2d 112 (La.1985). However, on trial of the exception all well-pleaded facts must be accepted as true. LSA-C.C.P. Art. 931; Caldwell v. Second JD Indigent Defender Bd., 475 So.2d 96 (La.App. 2d Cir.1985), writ denied, 477 So.2d 1126 (La.1985); Abernathy v. Varnado, 409 So.2d 682 (La.App. 1st Cir.1982), writ denied, 412 So.2d 1120 (La.1982). Every reasonable interpretation must be accorded the language of the petition in favor of sustaining its sufficiency and in allowing the litigant the opportunity to present his evidence. Ward v. Pennington, supra; Haskins v. Clary, 346 So.2d 193 (La.1977). Any doubt must be resolved in favor of the sufficiency of the petition. Johnson v. Edmonston, 383 So.2d 1277 (La.App. 1st Cir.1980).
In passing on CNB's exception, we are provided little guidance in that few prior Louisiana decisions have addressed claims of lender liability.[1] One case that does touch upon the issue, however, is Busby v. *1139 Parish National Bank, 464 So.2d 374 (La. App. 1st Cir.1985), writ denied, 467 So.2d 1132 (La.1985). There, the business of the borrowers failed, provoking a foreclosure by the bank. Alleging, inter alia, breach of a fiduciary obligation and negligent misrepresentation, the debtors later commenced suit against the lender. Although denying recovery because of insufficient evidence, the First Circuit nevertheless implicitly indicated that a cause of action may be premised on the theories asserted in that proceeding. Assuming, then, that a lender may be held liable on such bases, Lucien's allegations must be evaluated in that light.
In order to recover for negligent misrepresentation, a litigant must establish: 1) a legal duty on the part of the defendant to supply correct information to the plaintiff; 2) a breach of this duty; and 3) damages to plaintiff as a result of his justifiable reliance upon the misrepresentations. Busby, supra. A review of Lucien's petition in reconvention discloses no averment that he was supplied any incorrect information. Rather, the thrust of his allegations emphasize quite simply the absence of information. Hence, the pleadings, even accepted as true, reveal no right to recover on the basis of negligent misrepresentation. Nor do the stated facts indicate that Lucien's connection to CNB had been transformed from an ordinary lender-borrower or lender-guarantor association into a fiduciary relationship, the breach of which would provide a cause of action.
As previously mentioned, Lucien also urges applicability of a civil code article and a statute directing the performance of contracts in "good faith," i.e., he contends a breach occurs if contractual discretion is exercised in "bad faith," a term connoting fraud, deception, or sinisterly motived nonfulfillment of an obligation. See Palombo v. Broussard, 370 So.2d 216 (La.App. 3rd Cir.1979). The concept of good faith has also received statutory treatment. LSA-R.S. 10:1-203. Of course, the common law has for some time imposed an implied obligation of good faith, whatever its parameters, in every contract; and in some jurisdictions courts have found lenders liable for breaching that obligation, particularly when exercising contractual discretion. See Comment, Good Faith Theories of Lender Liability, 48 La.L.Rev. 1181 (1988). An analysis of Lucien's petition, though, demonstrates that he has failed to factually allege a cause of action under such a theory, accepting for discussion's sakeand without decidingits availability in Louisiana lender liability cases.
Several of the derelictions claimed in the petition relate to failures to investigate and analyze the feasibility of the loan and the construction project, but no contractual commitment to perform such acts is alleged. Even the averment of a departure from "good and sound banking procedures" does not so suffice. Other complaints do concern obligations allegedly arising from the construction loan agreement. Those cite CNB's purported failure to obtain a total cost estimate prior to the initial disbursement, its lack of project monitoring, and its continued funding despite having the means to know the project would exceed the loan limit. Since Lucien nowhere pleads that he was a party to the loan agreement, however, a certain degree of doubt immediately exists as to his right to assert a claim arising from a default under that contract.[2] Furthermore, no contention is made that, through the contract, CNB retained the complete discretion to decide on the continued advancement of funds.
In any event, it is clear that the pleadings fail to state a cause of action arising from a "good faith" violation. The petition does not allege, either expressly or impliedly, that any of CNB's actions or failures to act were prompted by fraud, ill will, or sinister motivation.
Our next inquiry anent any award of damages, then, is whether or not the facts alleged, if true, indicate a tortious breach by CNB of a duty of care owed to Lucien. Hence, it first must be ascertained *1140 whether such a duty indeed existed, an issue dependent upon the facts and circumstances, and on the relationship of the parties. White v. McCoy, 552 So.2d 649 (La. App. 2d Cir.1989); Blakeney v. Tidewater Compression Service, 463 So.2d 914 (La. App. 2d Cir.1985), writ denied, 467 So.2d 535 (La.1985). Of course, the existence of a duty is a question of law. Dillon v. Louisiana Power & Light, 557 So.2d 293 (La.App. 4th Cir.1990); Spell v. Executive Officers, Etc., P. & W. Indus., Inc., 316 So.2d 474 (La.App. 1st Cir.1975), writ denied, 320 So.2d 911 (La.1975).
Lucien's allegations, even generously construed, do not indicate a duty by CNB to conduct the various investigations and analyses described in the petition. To impose such requirements would significantly alter the relationship between banks and those with whom they deal. In effect, it would impose liability upon banks for business failures arising through ventures they financed. As a guarantor, Lucien could and should have apprised himself of the soundness of the loan's ultimate use prior to obligating himself, rather than delaying until later and then attempting to seek refuge in grievances concerning CNB's business practices. Moreover, despite his present complaints, Lucien obviously was aware that the principal debtor's assets alone would not support the loan inasmuch as a guarantor was needed. Furthermore, as previously mentioned, Lucien describes no assurances or misrepresentations on the part of CNB. Instead, he complains about a lack of research and counsel, inactions which, under the facts alleged, we decline to equate with a cause of action for damages.
If, in truth, CNB's methods of analyzing loan applications are deficient and result in imprudent business decisions, shareholders are harmed, not borrowers or guarantors who presumably are cognizant both of the potential risks they encounter and their duty to repay the money loaned. In short, within the facts alleged, we find no source of a duty in tort which would impose liability upon the bank.
Our position is buttressed by the rationale of Wagner v. Benson, 161 Cal.Rptr. 516, 101 Cal.App.3d 27 (4th Dist.1980). That case involved borrowers who, following the failure of a cattle raising venture in which they were involved, sued their bank under several theories of liability. Regarding negligence allegations, the court stated:
As to the negligence claim, the [borrowers] allege they suffered substantial foreseeable harm from the Bank's negligence in loaning money to them, as inexperienced investors, for a risky venture over which the Bank exercised influence and control. However, the Bank owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender `actively participates' in the financed enterprise `beyond the domain of the usual money lender' ...
Id., at 521, 101 Cal.App.3d at 35. The same precept persuasively applies to the case sub judice.
In addition to the matters previously discussed, the reconventional demand also mentions the loan's initial rejection and subsequent approval after resubmission through an entity closely aligned with CNB. Although apparently such facts were meant to denote some impropriety, they cannot, unaugmented, provide a basis of recovery. In fact, Lucien in his pleading acknowledged that he had no "clear explanation" as to CNB's change of heart regarding the loan. The inability to specify any irregularity in the loan approval and to connect it factually to resulting damages demonstrates the legal insufficiency of the allegations.
Finally, Lucien avers, "as just another example of the negligence of the commercial officers" of CNB, that a $200,000 letter of credit, a piece of collateral, was allowed to lapse. Specifically, the letter supposedly was placed in an incorrect folder in contravention of bank policy. Yet, the guaranty agreement, signed by Lucien, permits CNB to surrender any securities *1141 without notice or consent from him. Thus, no basis for the complaint exists.

CONCLUSION
For the foregoing reasons, the trial court acted properly in dismissing Lucien's reconventional demand. That judgment is affirmed with costs to be borne by appellant.
AFFIRMED.
NOTES
[1] For a discussion of various possible, yet still largely unexplored, approaches to lender liability within our state's legal framework, see Comment, Louisiana Lender Liability, 50 La.L.Rev. 143 (1989).
[2] Although a guarantor, or surety, may assert almost all defenses available to the principle debtor, LSA-C.C. Art. 3046, we are here concerned with a reconventional demand.