A case involving the overruling by the trial court of exceptions to the manner in which citation was·served is appealable, so that certiorari and prohibition will not lie.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. § 5; Dec. Dig. ☞5(1); Prohibition, Cent. Dig. §§ 5, 6; Dec. Dig. ☞3(2).]

Action by Bessie Wilson against the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiff, and defendant applies for writs of certiorari and prohibition. Application denied.

Hunter C. Leake, of New Orleans, and Harvey E. Ellis, of Covington (Chas. N. Burch and H. D. Minor, both of Memphis, Tenn., of counsel), for relator.

PROVOSTY, J. An exception to the manner in which citation was served was over- ruled by the trial court; and defendant applies to this court for the writs of certiorari and prohibition. The case is appealable, and the trial court has jurisdiction of it; therefore the remedy is by appeal, and the said writs will not lie. State ex rel. Jennings v. Miller, Judge, 109 La. 704, 33 South. 739; Iberia v. Morgan's L. & T. R. & S. S. Co., 129 ·La. 492, 56 South. 417; State ex rel. La. Trust Savings Bank v. Board of Liquidation, 135 La. 571, 65 South. 745.

Application denied, at the cost of relator.

---

(71 South. 931)

No. 20652.

MONTGOMERY–FERGUSON CO. v. WILLIAM T. HARDIE & SONS.

(March 20, 1916. Rehearing Denied June 5, 1916.)

*(Syllabus by Editorial Staff.)*

1. PARTNERSHIP ☞242(5)—ACTION BY PARTNERSHIP—EVIDENCE.

In a suit by a firm brought on the ground that the proceeds of the cotton shipped by it to the defendants exceeded its debt to the defendants, leaving out of the account the debt of the partner to whose business the firm had succeeded, and that the defendants owed such amount, and that the firm had never agreed to pay the debt of such partner, and that he was without authority to represent the firm in agreeing that the firm should pay it, evidence *held* to show that the firm's business was merely a continuation of such partner's business. ·

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 506; Dec. Dig. ☞242(5).]

2. PARTNERSHIP ☞146(1) — AUTHORITY OF PARTNER.

In such case the partner whose business had been so continued by the firm was authorized to enter into the agreement with the defendants whereby he executed two notes to defendants, one in settlement of his own debt, and one for the amount agreed to be advanced to his firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 242, 245; Dec. Dig. ☞146(1).]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the Montgomery-Ferguson Company against · William T. Hardie & Sons.

Judgment for defendants, and plaintiff appeals. Affirmed.

Richardson & Richardson, of Homer, for appellant. Miller, Miller & Fletchinger, of New Orleans, for appellees.

PROVOSTY, J. Passing over the exception of want of proper parties and the plea of prescription, although the exception of want of proper parties would seem to be well founded, since the only way in which R. P. Dawson, now admittedly a partner in the plaintiff firm, was made a party, if at all, was by a supplemental petition which is not in the record and, so far as appears, was never filed, and coming at once to the merits, we find plaintiff's claim to be unfounded.

The facts are that G. E. Montgomery had been doing business with the defendant firm for some years, and keeping a good account with them, when, in the latter part of 1902, he formed a partnership with James L. Drew, and Christie O. Ferguson for carrying on the same business, which consisted, in the main, of the ownership and operation of a cotton plantation, and, in connection with it, the carrying on of a commissary, or country store, business. The store was at Robeline, La., and the business was conducted from there. The partnership assumed charge of the business on the 1st of January, 1903.

The defendants are commission merchants and cotton factors in New Orleans. They make cash advances to planters and country store merchants on the faith of cotton to be consigned to them for sale on a commission. In January, 1903, when Montgomery, Ferguson & Co. succeeded G. E. Montgomery in the latter's plantation and store business, this business was owing a balance to the defendant company, and all the cotton of the cotton season of 1902–03 has not yet been shipped. On January 4, 1903, G. E. Montgomery wrote to the defendants as follows:

"I will be down in the next few days and settle up my account with you, as I have made a change in the business, as you will see from the above [meaning from the letter head]. Those are the gentlemen who have been interested with me in the plantation, and we all thought it best to take an equal interest in the store. And all cotton to be shipped from now on will come in the firm's name."

The letter head of the paper on which this was written was as follows:

"G. E. Montgomery                    C. O. Ferguson
"Drew Ferguson                       J. L. Ferguson
"Office of Montgomery, Ferguson & Co.
               "Robeline, La."

At that date Montgomery's account with the defendant company showed a considerable debit balance (the exact amount of which is not shown in the record), and the defendant company held his note for $6,500 to represent and stand for whatever balance he might be found owing on final settlement. The defendant company had some cotton on hand for him unsold.

The business with the defendant company continued uninterruptedly; the only change being that a new account was opened in the name of the firm, and all cottons received were credited to this new account, and the checks upon the defendant company were drawn by the new firm instead of by Montgomery individually.

On January 24, 1903, a letter signed "G. E. Montgomery, per Hyams," and written on paper with the heading of the new firm, was received by the defendant company. Hyams was the bookkeeper of the new firm. This letter contained a remittance of $1,500 to be applied to the credit of Montgomery's individual account and ended as follows:

"And when balance shipments are completed I will straighten out the difference."

On February 2, 1903, the defendant firm wrote Montgomery that, as he was no longer shipping the cotton in his name, they would request a remittance on his personal account.

In answer to this letter the defendant company received a letter dated March 14, 1903,

written by the bookkeeper of the firm under the letter head of the firm and signed "G. E. Montgomery, per Hyams," stating that he (Montgomery) had been unable to make the collections which he expected to make, and that he proposed to give the note of the firm payable in the fall in settlement of the balance due by him, and to agree on the part of the firm to ship not less than 600 bales in the next cotton season, or to pay a forfeit for any shortage in the number of bales to be thus shipped.

On April 23, 1903, the defendant company wrote to Montgomery inclosing a statement of his account which showed a debit balance of $4,850.47, and two bales of cotton unsold, and expressing a willingness to accept the note of the new firm in settlement of this debt, provided a remittance of $1,500 to $2,000 was made in reduction of it, and advising him that the firm had been drawing heavily, although no arrangements had yet been made for the year's business.

On the 25th Montgomery wrote in answer that he could not send cash, but could send some notes of the Victoria Lumber Company for $6,000.

On May 6, 1903, Montgomery came to New Orleans, and there made the necessary arrangements with the defendant company for the advances of the year. The defendant company agreed to make the advances, and Montgomery, for the new firm, executed two notes, one in settlement of his own debt, and one for the amount agreed to be advanced, and agreed to ship 800 bales of cotton, or pay a commission of $1 per bale for any shortage.

On September 16, 1903, the defendant company mailed to the new firm a statement of its account. On this statement was a memorandum to the effect that the defendant company held the two notes executed by Montgomery.

On November 25, 1903, the defendant company mailed to the new firm another state-

ment of its account, and on this statement also the two notes figured.

On December 1, 1903, the plaintiff firm wrote to the defendant company:

"Mr. Montgomery will be in to see you this week in regard to his individual account."

And on December 4th:

"We suppose Mr. Montgomery has been around to see you in regard to his account, as he has been in New Orleans this week."

Both these letters were written by J. L. Ferguson.

The defendant company answered on the 5th that it did not understand what was meant exactly by Mr. Montgomery's individual account, as he had none with it; to please explain.

On December 8th J. L. Ferguson wrote:

"I did not know that this amount had been transferred to the present firm's account. Saw Mr. Montgomery yesterday. He explained that he had spoken to other members of the firm about this matter, but had neglected to call my attention to it. I did not understand the situation is the reason I referred to it."

In April, 1903, Mr. Montgomery moved from Robeline to Natchitoches, La., but continued to draw drafts on the defendant company for the firm, and also to correspond for the firm. Mr. J. L. Ferguson remained at Robeline in immediate charge of the business there. In February, 1904, the defendant company sent Mr. Montgomery, at his request, at Natchitoches, a statement of the plaintiff firm's account. This statement, like the others, contained a memorandum of the notes. Whether the attention of Mr. J. L. Ferguson was brought at once to this statement of account does not appear; but on August 22, 1904, he wrote the defendant company for his firm:

"We are in receipt of your statement of recent date, and do not fully understand some of it. We will see Mr. Montgomery in a few days and check it up with him. We notice you make a charge for cotton not shipped also interest on that amount. We certainly don't understand this as we did not know of such contract being made. Mr. Montgomery also states that $756

had been paid by the Victoria Lumber Co. for our credit. We will write you again as soon as we see him which will be in this or the first of next week."

On September 1, 1904, Mr. J. L. Ferguson, wrote the defendant company for his firm:

"We have never understood fully the arrangements made by Mr. Montgomery, and have made a date with him for Monday next to check up. Our books show that we shipped cotton to more than cover our account of last year. And we note from your statement gotten recently that you applied the cotton to note given by Mr. Montgomery for his personal account, and which we wrote you that we did not understand when we first received statement showing this item last summer. Will write you again as soon as we check up with Mr. Montgomery, at which time he says he will settle amount due by him."

Some time in 1904 (date not fixed in the record) Montgomery had sold his interest to a Mr. Lee Tigner. Whether this was before or after September 1, 1904, when, for the first time, J. L. Ferguson, for the plaintiff firm, announced the intention not to be bound by the note given by the firm for the balance due for the preceding year's business, does not appear.

No drafts were drawn by the plaintiff firm on the defendant company after December 24, 1903. The defendant company had then on hand a good deal of cotton for the plaintiff firm, which at the request of the plaintiff firm it was holding for a better market. This cotton the defendant company disposed of in the course of the year 1904; and on August 18, 1904, rendered a final account of it. This left the plaintiff firm owing a balance of $4,149.14; all debts paid, including the note given for the balance due by Montgomery on the preceding year's business. During the years 1905, 1906, 1907, 1908, and 1909 the defendant company went on collecting the pledged notes of the Victoria Lumber Company and attributing the proceeds to the payment of this balance, until in December, 1909, it rendered a final account showing full payment of this balance. In October and November, 1904, J. L. Ferguson wrote several letters

to the defendant company for his firm insisting that his firm did not owe this Montgomery debt, nor the commissions charged for the shortage on the 800 bales of cotton agreed by Montgomery to be shipped. As each of the pledged notes of the Victoria Lumber Company matured and was collected the defendant company rendered to the plaintiff firm a statement of account showing the credit.

The present suit was filed in May, 1912. The contention of the plaintiff firm is that the proceeds of the cotton shipped by it to the defendant firm exceeded by $2,711.43 its debt to the defendant company, leaving out of the account the Montgomery debt, and that the defendant company owes this amount, as the plaintiff firm never agreed to pay this Montgomery debt; Montgomery having been without authority to represent it in agreeing to do so.

The Messrs. Ferguson testify that they never had any knowledge of Montgomery's having made this agreement for the firm until about the time Mr. J. L. Ferguson wrote the letter of September 1, 1904.

The bookkeeper testifies that, as far as he recollects, the firm's account with the defendant company was carried on on the books of the plaintiff firm as a continuation of the Montgomery account. To the interrogatory:

"Did J. L. Ferguson know during the season of 1903 that George E. Montgomery was in debt to William T. Hardie & Co. at the end of 1902?

—he answered:

"I don't know what kept him from knowing it, as he was with me in the store where the books were, and the account was kept in them; he looked at the books every day."

In one of the letters of the plaintiff firm the statement is made that Montgomery sold out his interest in the business at a handsome profit.

Montgomery left the country some years ago, and his whereabouts are unknown.

The defendant firm contends that Mont-

gomery, in binding the firm for the balance of his account of the year 1902, acted with the full knowledge and consent of his partners, at least of J. L. Ferguson, and that, at any rate, the plaintiff firm, having reaped the benefit of the arrangement made by Montgomery for obtaining advances from the defendant company for continuing the business, of which arrangement this agreement to pay the balance due on the preceding year's business was a part, and having delayed to repudiate said agreement until it was too late for the defendant company to protect itself by proceedings against Montgomery's interest in the firm, is now estopped from contesting the said act of Montgomery.

[1, 2] We think the firm's business was merely a continuation of Montgomery's business. This conclusion results inevitably from all the circumstances of the case, notable among which are the two facts, otherwise inexplicable, that part of the cotton of Montgomery's business season of 1902 which, if he had not formed this partnership, would have gone in part payment of this debt of his, was credited to the account of the firm, and that the firm drew drafts on the defendant company to an amount exceeding $2,000 without any arrangement whatever having been made for that line of conduct, except the implied and tacit one that the one business was but a continuation of the other.

Under these circumstances we think Montgomery had authority to enter into the said agreement.

Judgment affirmed.