STOULIG, Judge.
Plaintiff, Biloxi Canning and Packing Co., Inc. (Biloxi), filed suit against Foti and Danna,[1] a commercial partnership, and its individual partners, Charles Foti, Jr., and Charles Danna, to recover a duplicate payment of $5,775.40 for 70 barrels of raw shrimp delivered to plaintiff on November 25, 1972. Plaintiff issued the first check to “Foti and Dana” on November 25, 1972, for $5,775.40. Later, at the request of Charles Danna, Biloxi filed a written order to stop payment on this check and reissued two substitutes on December 6, 1972 — one to the partnership’s supplier, Southwest Pass Seafood, for $5,124 and the other to Kenneth Danna for $651.40. Plaintiff only issued the second checks after an employee of its bank assured its representatives the first check had not cleared. However the computer erred, the first check had been presented for payment in late November and cleared the bank. Plaintiff’s efforts to be reimbursed were unsuccessful; hence this suit.
Defendant Charles Danna admitted he requested and received duplicate checks and, in third party pleadings, asked that Foti be held liable for wrongfully converting the proceeds of the first check and failing to pay the $5,124 due Southwest Pass Seafood. Danna also sought an accounting from Foti on the dissolution of the partnership. Defendant Charles Foti filed a general denial and, in third party pleadings, called on Danna to account for the proceeds of the second checks. Issue was never joined as to the partnership and no default judgment was entered against it.
After trial on the merits, judgment was rendered awarding plaintiff $5,775.40 against Charles Danna and casting Foti for one-half of that amount on Danna’s third party demand. All other claims were dismissed and the right to demand an accounting on the dissolution of the partnership was reserved to Danna. Only plaintiff, Biloxi, and defendant Charles Danna have appealed.
The facts briefly are these: In July 1972, Charles Foti, Jr., and Charles Danna formed a partnership to operate a seafood business. Foti was to handle the paper work and obtain the equipment, while Dan-na was responsible for buying and selling shrimp. Plaintiff’s representatives dealt exclusively with Charles Danna and had no personal contact whatsoever with Foti. The partnership actually “freighted” shrimp purchased from other sources, collected from plaintiff on delivery, and then paid the seller for the bulk shrimp it supplied.
D. J. Venus, plaintiff’s president, testified he would issue checks for each deliv *764 ery as he was instructed by the truck driver delivering the load. Between July and November, 1972, the drivers instructed plaintiff’s representatives to issue checks for most of the balance indicated on the invoice to “Foti and Danna.” The remaining amount was paid to Charles Danna or to either one of his sons. 'Charles Danna testified there was a kickback system of which Foti was unaware and while the partnership was in existence, plaintiff’s records reflect that a member of the Dan-na family received payments up to $450 that appear to have been skimmed from the partnership profits.
In conjunction with the November 25, 1972 delivery, Biloxi was presented with a $6,225.40 invoice for a Foti and Danna shipment. Plaintiff issued one check to Kenneth Danna for $450 and the other to Foti and Danna for $5,775.40. Foti deposited the larger check to the partnership account on November 27.
About this same time, Foti told Danna the partnership was dissolved and gave him a letter to this effect. When Charles Danna next saw Dale Vinet, proprietor of Southwest Pass Seafood, he learned Vinet had not been paid the $5,124 due for the November 25 shipment to plaintiff.
Although the partnership was dissolved, Danna intended to continue in the shrimp business and it was to his interest to see that Vinet was paid because shrimp were in scarce supply at that time of year. Vi-net had contacted Foti and was promised he would be paid, but Foti never sent the check. He (Vinet) waited for a reasonable time to elapse before attempting to get his money from plaintiff.
Meanwhile, on December 1 and 2, plaintiff bought two loads of shrimp from defendant Danna and issued checks for the larger portion of the invoices to “Charles Dana Seafood” and “Dana Seafood.” ■ Both invoices named the seller as “Danna Seafood.”
On December 5, 1972, at Vinet’s request, Danna asked Biloxi officials to stop payment on the first check issued to Foti and Danna and issue substitute checks, one to Southwest Pass Seafood for $5,124 and the second to Kenneth Danna for $651.40. Roy Elder, plaintiff’s office manager, was assured by an employee of its bank on both December 5 and December 6 that the check issued to Foti and Danna on November 25 had not cleared. Foti was never contacted before the second checks were issued and interestingly enough, the substitute checks included a $651.40 payment to Kenneth Danna, who urged no claim against the partnership.
It is obvious from the record that plaintiff (1) issued the second set of checks only because its bank erred in reporting the first had not cleared; (2) made no effort to contact Foti or protect the partnership interest for $651.40; (3) had an interest in keeping the goodwill of Charles Danna and Vinet of Southwest Pass Seafood ; and (4) was not a creditor of the Foti and Danna partnership.
There is no basis in law for holding Foti liable to plaintiff for any part of the duplicate payment. When Foti dissolved the partnership, he had no obligation to notify plaintiff, because he was not in a position of having credit extended to his business by plaintiff on the assumption he (Foti) was personally liable. This is not to say plaintiff had no legal recourse. Had it paid Southwest Pass Seafood and taken an assignment of its claim, plaintiff would have had a sound basis on which to proceed.
The cases upon which appellants rely deal with the obligation of a partner to notify creditors of his withdrawal from the business if he wishes to terminate his individual liability for partnership debts.[2] As we have observed, they are inapposite because there was no debtor-creditor relationship here.[3]
*765 We affirm that part of the judgment casting Danna for the sum of $5,775.-40. Not only did he assume sole responsibility for having duplicate checks issued, but he also directed the payment of part of the amount due the partnership to one of his sons. Plaintiff had dealt exclusively with Danna in all previous sales from the partnership and should not sustain a loss because of Danna’s manipulations. Equity demands plaintiff be reimbursed by Danna. (C.C. art. 21.)
In view of the trial court’s finding that the partnership of Foti and Danna is not liable, we do not understand the basis for the judgment against Foti as the record is presently constituted. However, we cannot disturb the award against him because he has neither appealed nor filed an answer to either one of the appeals.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. The name Danna is misspelled as “Dana” in the title and at various places throughout the record.

. Modern Appliance and Supply Co. v. B. F. Ibos & Sons, 16 So.2d 552 (La.App.Orl.1944).

. But were we to impose this obligation on Foti, we find that from the circumstances, *765 plaintiff was aware of the termination of the partnership when the checks were issued. By the very nature of Danna’s request, it should have been obvious the partnership was embroiled in internal problems. If we couple with this fact the evidence of two shipments delivered by and checks therefor issued to a new firm, we conclude the officials of plaintiff should have been aware of the dissolution.