452 So.2d 312 (1984)
THERMAL SUPPLY OF LOUISIANA, INC., Plaintiff-Appellant,
v.
Michael T. SUMTER and Leonard Sumter, Sr., d/b/a Sumter Plumbing Company, Defendant-Appellee.
No. 16297-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1984.
Miller, Titone, Dawson & Askew by Joseph P. Titone, Shreveport, for plaintiff-appellant.
Leonard Sumter, Sr., in pro. per.
Before PRICE, C.J., and HALL and NORRIS, JJ.
HALL, Judge.
The plaintiff, Thermal Supply of Louisiana, Inc., filed suit against Michael T. Sumter and Leonard Sumter, Sr., d/b/a Sumter Plumbing Company, to recover an unpaid balance of $1,169.95 due on an open account in connection with the sale of plumbing supplies. Leonard Sumter, Sr. filed an answer in proper person and represented himself at the trial of this matter. Michael T. Sumter filed no answer and made no *313 appearance at trial. Following trial, judgment was rendered rejecting plaintiff's demands against Leonard Sumter, Sr. while reserving plaintiff's rights against Michael T. Sumter. From that judgment, the plaintiff devolutively appealed. We reverse and render judgment for the plaintiff.
The facts of this case are as follows. In 1976, Leonard and his son, Michael Sumter, went into the plumbing business together in Shreveport. On June 18, 1976, Leonard Sumter, Sr., on behalf of the partnership, executed an application for credit with the plaintiff corporation which was accepted. From that point until the spring of 1980, the Sumters purchased plumbing supplies from the plaintiff on credit and paid their bills without fail.
In April or May 1980, the partnership was dissolved, its assets liquidated, and all of its outstanding debts to the plaintiff paid in full. No notice of dissolution or liquidation was given to any creditor of the partnership, including the plaintiff corporation. Thereafter, Leonard Sumter joined with his son in a grocery business and they continued in that endeavor until the store was consumed by fire.
After destruction of the grocery store, Michael Sumter decided to reenter the plumbing business. His father decided not to become involved in this venture. The plumbing operation established by Michael Sumter did business under the name previously utilized by him and his father when they were in business together, Sumter Plumbing Company. Although the new business was established at a different location than the old concern because that building had been sold upon liquidation of the prior plumbing company, the new company retained not only the same name but also the same post office address for billing purposes as utilized by the old Sumter Plumbing Company. Additionally, at least one employee of the former company was hired by the new Sumter plumbing concern and signed for merchandise received from plaintiff. Despite his knowledge of these matters, Mr. Sumter, Sr. did not notify the plaintiff that he was not involved in the new Sumter Plumbing Company opening in Shreveport, the same city in which the former plumbing partnership had operated until approximately one year earlier.
Mistakenly thinking itself to still be dealing with the old Sumter Plumbing Company of which Leonard Sumter, Sr. was a member, the plaintiff extended credit to the new Sumter Plumbing Company without requiring the execution of a new credit application as required by company policy and operating procedure. From July 1981 through August 1982, the new Sumter Plumbing Company purchased $1,169.95 worth of plumbing supplies from plaintiff on account. Although not actually involved in the business, Leonard Sumter signed one of the invoices sued on by the plaintiff, having accompanied one of his son's employees to the plaintiff's place of business to pick up merchandise. On December 9, 1982, Thermal Supply filed this suit to recover that past due sum.
In its written opinion, the trial court noted that in the credit application signed by Leonard Sumter, Sr. he promised to pay plaintiff all indebtedness "owing by me". The trial court reasoned that since Leonard Sumter had gone out of the plumbing business approximately one year prior to the time when the indebtedness sued upon began to be incurred and was not involved in the plumbing company opened by his son, he never incurred any of the indebtedness sued upon in his own behalf and, therefore, was not liable to the plaintiff. Accordingly, the trial court rendered judgment rejecting plaintiff's demands against Leonard Sumter, Sr., while reserving plaintiff's rights against Michael T. Sumter.
The trial court's conclusion that Leonard Sumter was not involved in his son's plumbing business when the debt at issue was incurred is amply supported by the record. From that conclusion, however, it does not necessarily follow that Leonard Sumter, Sr. is in no way liable for the sum due on this open account.
The basis for Leonard Sumter's liability in this case lies in his failure to notify the partnership's creditors of his withdrawal *314 from the partnership or its dissolution. In the absence of such notice, the withdrawing partner is not exonerated from responsibility for subsequent engagements, made in the name of the partnership, with persons previously in the habit of dealing with the partnership. R. Marsh Denman & Co. v. Dosson, 19 La.Ann. 9 (1867). See also Schorten v. Davis and Brother, 21 La.Ann. 173 (1869); Fowler Commission Co. v. Gray & Keener, 16 La.App. 167, 133 So. 470 (2d Cir.1931); Marquette Cloak & Suit Co. v. Netter & Meyer, 151 So. 820 (La.App.2d Cir.1934); Modern Appliance & Supply Co. v. B.F. Ibos & Sons, 16 So.2d 552 (La.App.Orl.Cir.1944); Lowe v. Penny, 7 La.Ann. 356 (1852); Montgomery-Ferguson Co. v. William T. Hardie & Sons, 139 La. 644, 71 So. 931 (1916); Crowley Trust & Savings Bank v. Hollier, 161 La. 1079, 109 So. 907 (1926). Contrast with Trane Company v. Williams, 143 So.2d 119 (La. App. 1st Cir.1962) and Biloxi Canning and Packing Co., Inc. v. Foti and Danna, 333 So.2d 762 (La.App. 4th Cir.1976) in which sufficient notice of withdrawal or dissolution was given.
It is undisputed that the creditors of the former partnership, including the plaintiff, received no notice of Leonard Sumter, Sr.'s withdrawal from or the dissolution of the Sumter Plumbing Company which occurred in April or May 1980. Furthermore, the plaintiff received no notice that the Sumter Plumbing Company which purchased goods from it on credit in July 1981 was not the same partnership composed of Leonard Sumter, Sr. and Michael T. Sumter.
Under the facts of this case, we find the plaintiff creditor's belief that it was dealing with the formerly-existing partnership reasonable and entirely justified. The new debtor had not only the same name as the old one but also the same mailing address for billing purposes. While it is true the location of the debtor's place of business had changed, the new Sumter Plumbing Company continued to pick up the merchandise it ordered from the plaintiff at the plaintiff's place of business, thereby conducting its transactions with the plaintiff in the same manner as its predecessor partnership. There is no indication in the record that any merchandise was ever delivered by the plaintiff to either of the two locations occupied by the Sumter companies. Additionally, the record reflects that at least one individual was employed by both Sumter companies and signed for and picked up part of the merchandise at issue at the plaintiff's place of business.
There was no duty on the part of the plaintiff creditor to inquire if the Sumter Plumbing Company with which it dealt in July 1981 was the same entity it had previously extended credit to without incident for almost four years between the dates of June 1976 and April or May 1980. Plaintiff's employees testified that several months routinely elapse between purchases or series of purchases from it by the vast majority of its clientele. Given this sporadic activity as the normal pattern of business transactions between the plaintiff and its customers, the gap of a little more than one year between purchases by Sumter Plumbing Company is not so inordinately long as to raise suspicion or obligate the plaintiff to further inquiry. Consequently, the plaintiff's assumption that it was merely once again extending credit to the Sumter partnership was reasonable under these circumstances.
It is Leonard Sumter, Sr.'s failure to give notice to the plaintiff of his withdrawal from or the dissolution of the Sumter partnership which gives rise to his liability for this debt. His failure to give notice, especially when he knew of his son's reopening of the business as a sole proprietorship, was an unreasonable disregard of commercial practices and an invitation for exactly this type of risk. It was reasonable to assume, given the circumstances under which the business was reopened, that a creditor of the former partnership might extend credit to Michael T. Sumter's company under the mistaken impression that it was dealing with the former partnership and based upon that prior entity's good payment record without taking those precautions normally associated with the opening *315 of a new credit account. Consequently, Leonard Sumter, Sr. should be and is hereby held liable for this debt incurred by his son's company.
Thermal Supply of Louisiana, Inc., extended credit to Michael T. Sumter's company on the basis of the promise and payment record of the partnership which preceded it. The creditor believed itself to be dealing with the partnership of which Leonard Sumter, Sr. was a member. The credit application relied upon by the plaintiff creditor is an application on behalf of the partnership executed by Leonard Sumter, Sr. Consequently, the creditor must be held to have looked to the partnership and its partners for payment in accordance with the credit contract and the law of partnership.
The application executed by Leonard Sumter in no way purports to be a personal guarantee by him of all the partnership debts, nor does the agreement provide for solidary liability of the partners for partnership debts. Consequently, Leonard Sumter, Sr.'s liability in this instance is governed by the law of partnership.
The debt at issue was incurred between July 1981 and August 1982. The law applicable to this controversy is LSA-C.C. Art. 2817 as amended by Act 150 of 1980, effective January 1, 1981, which provides for virile share liability of partners for partnership debts. Consequently, Leonard Sumter, Sr. is responsible for one-half of the sum due on the open account. See 42 La.L.Rev. 1440-48 for a discussion of the concept of virile liability as embodied in the 1980 revision of Louisiana's partnership law.
Accordingly, it is hereby ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, Thermal Supply of Louisiana, Inc., and against the defendant, Leonard Sumter, Sr., in the full sum of $584.98, with twelve per cent (12%) per annum interest thereon from September 10, 1982, until paid, and all costs of this suit including the cost of appeal. It is further ordered, adjudged, and decreed that all rights and/or causes of action the plaintiff might possess against the defendant, Michael T. Sumter, are hereby reserved. Reversed and rendered.