498 So.2d 120 (1986)
NU-LITE ELECTRICAL WHOLESALERS, INC.
v.
DECKARD & TREADAWAY ELECTRIC AIR CONDITIONING & REFRIGERATION, et al.
No. 86-CA-284.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1986.
*121 Henry F. Mestayer, Satterlee, Mestayer & Freeman, New Orleans, for plaintiff-appellant.
Randall O. Lewis, Luling, for defendants-appellees.
Before CHEHARDY, KLIEBERT and GRISBAUM, JJ.
KLIEBERT, Judge.
Nu-Lite Electrical Wholesalers, Inc., plaintiff-appellant, appeals devolutively from a judgment in its favor casting Deckard & Treadaway Electric Air Conditioning & Refrigeration, a Louisiana partnership, and Charles D. Deckard, individually, for $5,472.06 plus attorney fees, interest and costs; but dismissing Nu-Lite's suit against Rodney Treadaway, individually, the other member of the partnership. None of the defendants appealed, answered the appeal or filed briefs in this court. On appeal Nu-Lite contends the trial court erred in dismissing Treadaway from the suit because he was individually liable for two reasons: (1) Notwithstanding a dissolution of the partnership, he was liable for his virile share of the partnership debts, and (2) he signed a continuing guaranty agreement for the partnership debts. For the reasons which follow, we affirm.
On April 4, 1984 Charles Deckard and Rodney Treadaway executed written Articles of Partnership to form Deckard & Treadaway Electric Air Condition & Refrigeration. Subsequently, the parties, on December 7, 1984, executed an agreement dissolving the partnership. The agreement also conveyed Treadaway's interest in the assets of the partnership to Deckard for $7,500.00, payable in monthly installments extending to July 15, 1986. Under the agreement Deckard assumed all debts and liabilities of the partnership and Treadaway permitted Deckard to "use Rodney Treadaway's name for the business for a period of 120 days, not to exceed April 1, 1985, by which time he shall have the business operations, accounts, etc., in his own or some other name." The articles and the dissolution *122 were filed with the Clerk of Court for the Parish of St. Charles but the record does not reflect the date on which filed.
On April 3, 1984 a credit application containing the following was submitted to Nu-Lite:
 On October 2, 1985 Nu-Lite filed suit against the partnership and against Deckard and Treadaway individually for merchandise billed to the account of Deckard and Treadaway Electric Air Condition and Refrigeration from February thru May of 1985, which was subsequent to the agreement dissolving the partnership. Although Deckard, in proper person, filed a general denial, neither he nor anyone acting in his behalf appeared at the trial. On the other hand, although the record does not show an answer was filed by Treadaway, he was represented by counsel at the trial.
We first consider Nu-Lite's contention Treadaway was individually liable for his virile share of the partnership debt.
*123 Following the dissolution of the partnership, Treadaway disassociated himself with the business until March of 1985 when he returned as an employee. Deckard managed the business and continued to purchase materials on credit. These were billed to the partnership account. There is some conflict in the testimony as to whether the payments on the account were made on checks drawn on a "Deckard Electric" checking account or on the partnership account which was used prior to the dissolution of the partnership.
Generally, the liability of each partner for the partnership's obligations is fixed at the time of dissolution. See Cambre v. St. Paul Fire & Marine Ins. Co., 331 So.2d 585 (La.App. 1st Cir.1976) writ denied 334 So.2d 434 and 334 So.2d 435 (La.1976). However, in the absence of notice of the withdrawal of a partner from a partnership or of its dissolution, a withdrawing partner is not exonerated from responsibility for subsequent engagements, made in the name of the partnership, with persons previously in the habit of dealing with the partnership. Thermal Supply of Louisiana, Inc. v. Sumter, 452 So.2d 312 (La. App. 2nd Cir.1984); Trane Company v. Williams, 143 So.2d 119 (La.App. 1st Cir. 1962).
In Trane, supra, at 121 the court noted:
.... The applicable law on this point is well stated in the case of Modern Appliance & Supply Co., Inc. v. B.F. Ibos & Sons, La.App., 16 So.2d 552 from which we quote as follows:
"The law of the case is not in dispute. In order for a partner who has withdrawn from a firm to relieve himself from responsibility for the debts of the firm contracted after his withdrawal, to a creditor who has been doing business with the firm prior thereto, actual notice to such creditor must be given. See Reilly v. Smith, 16 La.Ann. 31; Fowler Commission Co. v. Gray & Keener, 16 La.App. 167, 133 So. 470; and Marquette Cloak & Suit Co. v. Netter & Meyer, La.App., 151 So. 820. Accordingly the partner, who seeks to be exonerated and who (as in this case) has filed a special defense to that effect, assumes the burden of showing by a preponderance of evidence that actual notice to the creditor was given. The usual mode in which such notices are sent is (as pointed out by the Supreme Court in Reilly v. Smith, supra) by circular letters addressed to the creditors and customers of the firm. This is particularly true in instances where the remaining partners continue the business of the firm in the same or a similar name. Of course, the retiring partner has the right to show, if he can, that verbal notice of his withdrawal had been given or that the creditor had actual knowledge but, in such cases, he encounters difficulty in sustaining his defense where the creditor denies his testimony....."
Since all partnership debts due at the time of the dissolution had been paid, to be absolved of liability Treadaway had the burden of showing actual notice of the dissolution of the partnership was given to Nu-Lite before the debts sued on were incurred.
In his testimony, Treadaway admitted picking up supplies at Nu-Lite "two or three times" while employed by Deckard. The dray tickets and invoices revealed the supplies were charged to the partnership name/account number but there is no indication Treadaway signed for the items purchased, or saw or knew the materials were charged to the former partnership account. Treadaway did not personally notify Nu-Lite of the dissolution of the partnership, nor did he indicate anyone else had done so on his behalf.
Defense witness Ms. Paula Simoneaux testified she was hired as a receptionist/accounting clerk by "Deckard Electric" in December of 1984, a short time before the partnership was dissolved. According to Simoneaux the sign on the business was changed to "Deckard Electric" in December of 1984 and the business moved to a location across the street. It is unknown *124 whether anyone from Nu-Lite visited the business or knew of the sign change. According to Ms. Simoneaux, all checks commencing from December of 1984 through August of 1985 were drawn on the account of "Deckard Electric" rather than on the former partnership account. The checks, however, were not introduced into evidence. Simoneaux also testified she informed sales personnel at Nu-Lite future charges were to be made to "Deckard Electric" because Treadaway was no longer with the company. However, no one told Simoneaux they were going to correct the account and she continued to sign dray tickets and invoices charging merchandise to the partnership name and account number. Simoneaux admitted "Deckard Electric" did not have an account with Nu-Lite and that she may not have informed Nu-Lite's credit manager Treadaway was no longer connected with the business until after the debt here sued on had been incurred.
Joe Impastato, Burt Robertson, Carl McCarson and Jettie Coston identified dray tickets and invoices they prepared for merchandise charged to the partnership account. They testified the purchaser instructed them to make the charges to that account and none of them recalled being informed Treadaway was no longer a partner. McCarson and Coston testified they would have passed such information on to the credit manager so a new account could be opened.
Apparently on a credibility call the trial court found "the representative of Deckard advised the salesmen Mr. Treadaway was no longer involved in the company, and appropriate action should have been taken in connection with it at that time." In ordinary civil actions the trial court is the trier of facts and its findings may not be distrubed on appeal unless they are manifestly erroneous or clearly wrong. In re Whitaker, 463 So.2d 1291 (La.1985); Florane v. Griffis, 476 So.2d 4 (La.App. 5th Cir.1985). Where there is a conflict of testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review even though the appellate court may feel its own evaluations and inferences are reasonable. Canter v. Koehring, 283 So.2d 716 (La. 1973). We cannot say the trial judge erred in finding that adequate notice was given to Nu-Lite of the dissolution of the partnership.
We next consider the guaranty agreement. Appellant contends Treadaway and Deckard are liable individually and in solido for the whole debt because their personal guaranty was never withdrawn. The trial judge found the guaranty invalid for a number of reasons:
"Number one, its reference to any credit does not have a set limitation with respect to credit that an individual, either as a personal guarantor or corporate obligator or personal obligation to the partnership, guarantees. He has no way of knowing what he is obligating himself to do.
So any credit to be permissible under the law of Louisiana, a continuing gurantee (sic) has to have a certain limit set to it. In this case, even assuming the court's interpretation may be wrong, it's obvious that the only credit that was extended to the parties was $500.00 in this case. And a letter was sent out by Nu-Lite's representative to the individuals advising them there was a $500.00 line of credit. That is all that any guarantor could reasonably be expected to guarantee, would be that amount.
* * * * * *
The court further finds that in this particular document, since the instrument was not completed where it says that payment was going to be guaranteed to Nu-lite for merchandise furnished to blank, it doesn't sy (sic) to whom the merchandise would be furnished. Before a person can become personally responsible in Louisiana, there must be a specific agreement. It must not be subject to interpretation. It must be exact in all of its terms and conditions. And in this particular case it was not."
*125 A contract of guaranty is similar if not equivalent to a contract of suretyship, and the terms are used interchangeably. McKesson Chemical Co. v. Tideland Chemical Co., 471 So.2d 812 (La.App. 3rd Cir.1985); McKendall v. Williams, 467 So.2d 1301 (La.App. 4th Cir.1985) writ denied 469 So.2d 986 (La.1985). Suretyship is an accessory promise by which a person binds himself for another already bound and agrees with the creditor to satisfy the obligation if the debtor does not. La.C.C. art. 3035. Further La.C.C. art. 3037 provides: "the suretyship cannot exceed what may be due by the debtor nor be contracted for under more onerous conditions." While a continuing guaranty agreement need not observe technical formalities, it must embody an absolute expression of an intent to be bound, the agreement must be in writing and must be explicit. Guaranty Bank & Trust Co. v. Jones, 489 So.2d 368 (La. App. 5th Cir.1986). Parol evidence may not be used to establish suretyship under La. C.C. art. 3035 et seq., nor the promise to pay the debts of another under (former) La.C.C. arts. 1890 and 1902;[1]Youngblood v. Pendleton, 446 So.2d 946 (La.App. 3rd Cir.1984), except where there is a primary obligation and a pecuniary or business motivation for the promise.
The document signed by Deckard and Treadaway provides in pertinent part:
"In consideration of any credit extended to the above customer, I (we, or either of us) will individually and/solidarily guarantee full and prompt payment at maturity of all invoices that NU-LITE ELECTRICAL WHOLESALERS, INC. renders for merchandise furnished to__________, and, such guarantee shall remain in force until its revocation is acknowledged in writing."
The failure to identify the party to whom the merchandise is furnished is a fatal flaw, for it cannot be presumed Deckard and Treadaway were guaranteeing paying for merchandise furnished to the partnership, and parol evidence is inadmissable to prove such a promise. As the document does not explicitly set forth what charges are guaranteed, it is invalid as a guaranty agreement and hence unenforceable.
Moreover, the procedure followed in confecting the agreement, i.e., the agreement was signed by the individuals as part of a credit application before Nu-Lite had actually agreed to grant a line of credit to the partnership, coupled with the fact a credit limit of $500.00 was set after the agreement had been signed, raises serious questions as to whether the agreement, even if properly confected, could be validly enforced as a suretyship contemplated by La. C.C. art. 3035 et seq., or a stipulation in favor of third parties coupled with a business or pecuniary interest as contemplated by La.C.C. art. 1978 and the jurisprudence formed thereunder.
For the reasons stated therefore we affirm the decision of the trial court. Appellant to pay all costs of the appeal.
AFFIRMED.
NOTES
[1] See now La.C.C. art. 1978.