| t KOSTELKA, J.
Plaintiffs, L.L. Kincade, Jr. and his wife, Bobbie (“Kincade”), appeal a district court judgment denying their claims stemming from a Letter Agreement dated May 11, 1977 between Mr. Kincade, an independent consulting geologist, and Midroc Oil Company (“Midroc”), a Texas general partnership then engaged in oil and gas exploration and development in north Louisiana. For the reasons stated herein, we affirm.

Facts and Procedural History

Prior to entering into the Letter Agreement with Midroc, Kincade had studied an area in Lincoln and Union Parishes and identified a prospect later named the “D’Arbonne Prospect” (the “Prospect”) in Union Parish. A prospect is a geographical area which is considered to have good potential for oil and gas production on the basis of the geological studies. Before having any dealings with Midroc as to the Prospect, Kincade submitted it to two other oil and gas operators, Clayton Williams (“Williams”) and Southland Royalty Company (“Southland”), with whom he had previous retainer agreements. Williams declined to take any action. Southland expressed interest and acquired mineral leases (the “Southland Leases”) from area landowners but decided not to drill in the area. On May 14, 1976, Southland as *814 signed to Kincade a three percent overriding royalty interest in the Southland Leases. On September 1, 1976, Southland and Kincade entered into a farmout agreement wherein Southland assigned its rights in the Southland Leases to Kincade, with Southland reserving an interest (the “Southland Farmout”) in the Prospect.
After acquiring the Southland Farmout, Kincade began discussions with James Harris (“Harris”), a Midroc partner, regarding the Prospect, who in turn discussed it with his partner, Donald Clark (“Clark”); however, at that time Midroc did not want to develop the prospect and referred Kincade to W.A. Moncrief 19,(“Moncrief’), an oil and gas developer who was interested in drilling a well in the Southland Farmout acreage. In December 1976, Kincade assigned his rights in the Southland Farmout to Moncrief. However, Moncrief was interested in acquiring additional leases in the Prospect, and on April 11, 1977, Clark assigned five oil and gas leases he had previously acquired in the Prospect to Moncrief. On April 12, Moncrief assigned back to Clark a 6.25% overriding royalty interest in these five leases, which Clark admittedly acquired on behalf of Midroc.
On May 11, 1977, Midroc and Kincade entered into the Letter Agreement, which was prepared and signed by Clark on behalf of Midroc. The Letter Agreement reads as follows:
This letter shall constitute our agreement regarding acreage in the South Halves of Sections 19 through 24 and all of Sections 25 through 36, Township 20 North, Range 1 West, Union Parish, Louisiana, hereinafter called “Area of Interest.”
You shall be entitled to one-third of any cash profit and one-third of any interest we have in oil and gas leases within the area of interest with the exception that you will not be entitled to any of Mi-droc’s interest under the Southland Royalty Company farmout of September 1, 1976, nor shall you be entitled to any of Midroe’s interest through its participation in that certain operating agreement dated February 24, 1977, naming Cities Service Oil Company as operator and W.A. Moncrief et al[.] as non-operator, and that operating agreement covering the South Half of Section 19, South Half of Section 20, North three Quarters of Section 29 and North three Quarters of Section 30 all in Township 20 North, Range 1 West, Union Parish, Louisiana.
When the Letter Agreement was executed in May of 1977, the only mineral interest possibly owned by Midroc in the “Area of Interest” was the 6.25% overriding royalty in the five leases previously acquired by Clark, one of which fell within the exclusion stated in the Letter Agreement. See footnote 3, infra.
On August 1, 1977, approximately three months after the execution of the Letter Agreement, the Midroc partnership terminated.[1] On that same date, a new 1 .¡partnership, also named Midroc Oil Company, was formed (which existed until March or April of 1981). Its partners were William Guffey, Clark and Harris. In 1979, Midroc Operating Company was incorporated for the purpose of operating oil and gas wells that had previously been drilled by the various entities, and that corporation was still in existence at the time of the trial.
After execution of the Letter Agreement, there was some drilling activity by Midroc-some wells within and some outside the “Area of Interest” as defined in the Letter Agreement. Although Kincade received payments by virtue of his three percent interest in the Southland Farmout, he received no payments from Midroc under the Letter Agreement. It was not until 1988, some eleven years after the Letter Agreement, that Kincade, in a casu *815 al conversation with Harris, inquired why he was not receiving payments from the Prospect wells. After that conversation, Kincade searched for the Letter Agreement but did not find it until February 1995, and the subject litigation ensued.
Kincade filed his action against Midroc, Harris and Clark and later named Ed Paramore, another Midroc partner, as an additional defendant.[2] Kincade prayed for an accounting of all monies received by the defendants by virtue of their interests or operations in the Area of Interest, which issue was reserved when the trial commenced. He additionally prayed to be declared owner of one-third (⅓) of any mineral rights owned by the defendants in the Area of Interest.
By stipulation of the parties, filed and read into the record at trial, the scope of the trial was limited to the following issues: (1) whether the Letter Agreement should be applied prospectively; (2) whether Kincade’s claims were prescribed; and (3) how the appellees’ defense of their individual limitation of liability was to |4be applied. After trial on the merits, the district court issued its Written Findings of Fact and Reasons for Judgment, and made the following conclusions:
1) the May 11, 1977, letter agreement does not impose any mutual obligations on the parties and does not establish an ‘area of mutual interest’ as the term is generally understood and accepted in the oil and gas industry;
2) under the terms of the letter agreement, neither Midroc nor its partners were obligated to acquire leases for the benefit of Kincade;
3) under the terms of the letter agreement, the plaintiffs have no right to participate in profits from production or oil and gas leases acquired after May 11, 1977, by Midroc Oil Company or its partners. Kincade’s claims are limited to participation in profits and leases owned by Midroc on the date the letter agreement was signed;
4) the plaintiffs’ claim for one-third of the revenues from the 6.25% overriding royalty interest acquired from W.A. Moncrief, [sic] has prescribed;
5) the defense of limitation of liability of the individual partners of Midroc Oil Company is moot.
Kincade appealed, arguing that the district court misinterpreted the Letter Agreement when it (1) limited Kincade’s interests to those owned by Midroc on the date of the agreement and (2) failed to recognize a valid conditional obligation by Midroc to share a portion of its mineral interests with Kincade. Additionally, Kin-cade argues that his claims under the Letter Agreement have not prescribed as determined by the district court.
DiscussioN

Prescription

Finding the issue of prescription determinative, we first address that assignment of error. Kincade maintains that his interest in any mineral leases purportedly transferred to him under the Letter Agreement is a real right not subject to the ten-year prescriptive period of a personal action.
Throughout these proceedings, Kin-cade’s argument has been twofold. First argued is the position that the Letter Agreement established a conditional -obligation, which was Midroc’s obligation to share its interests in mineral leases in | sthe Area of Interest with Mr. Kincade if Mi-droc ever acquired such interests. Second, he argues that the Letter Agreement was an agreement translative of title in any mineral leases Midroc had on May 11, 1977 or acquired in the future[3]; therefore, *816 the rights Kincade allegedly acquired from Midroc were real rights not subject to the ten-year prescriptive period of a personal action.[4]
Kincade may be correct in his assertion that the Letter Agreement contained a conditional obligation; however, we conclude that for that reason the Letter Agreement clearly is not an agreement sufficient to transfer title of mineral leases not already acquired by Midroc or even any leases that were owned by Midroc (i.e., possibly the Carson # 1 Well) at the time the Letter Agreement was executed. We agree with appellees that Kincade’s claim arising from the Letter Agreement constitutes a personal action, and as such, is subject to a ten-year prescriptive period commencing from the date of the Letter Agreement. Or, in the case of the Carson # 1 Well, any claim regarding that well prescribed ten years from Midroc’s failure to assign Kincade any rights in that well pursuant to the Letter Agreement, which claim the district court correctly recognized as prescribed.
In support of his argument that the Letter Agreement established a conditional obligation, Kincade correctly points to La. C.C. art. 1767, which states as follows:
A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
lfiIf the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.
In this case, it is clear that the Letter Agreement is not enforceable until the occurrence of an uncertain event. In other words, before Midroc could transfer or assign Kincade a one-third interest in any mineral leases, it had first to acquire those mineral leases. Because the condition contained in the Letter Agreement is suspen-sive by ‘definition, the Letter Agreement did not alone convey any real rights to Kincade. See Wampler v. Wampler, 239 La. 315, 118 So.2d 423, 426 (1960), where an assignment of mineral leases which was subject to suspensive conditions was insufficient to create an -ownership interest in those mineral leases, because the “[Cjondi-tions suspended the obligation of the assignment, which was not binding or enforceable against either party until the conditions were fulfilled....” Standing on its own, the Letter Agreement did not transfer any mineral interests to Kincade; it simply provided for a future transfer or assignment of an interest in any mineral rights which Midroc either had or may have acquired, and, therefore, any action by Kincade to enforce his rights under the Letter Agreement is clearly a personal action subject to the ten-year prescriptive period provided by La. C.C. art. 3499.
Kincade relies heavily on the case Wurzlow v. Placid Oil Co., 279 So.2d 749 (La.App. 1st Cir.1973), writ denied, 282 So.2d 140 (La.1973), arguing that it directly supports his position that his rights under the Letter Agreement were imprescriptible real rights. We find the facts of that case to be inapposite. In Wurzlow, at issue was a conditional agreement that the parties had acted on through the years prior to the litigation. Id. at 767. Placid Oil breached the ongoing conditional agreement (i.e., suspensive condition) within the ten-year period before the suit was filed, making Wurzlow’s claim against Placid Oil for specific performance timely. Id. at 769-770.
|7We find persuasive the case cited by the appellees, Ward v. Pennington, 434 So.2d 1131 (La.App. 1st Cir.1983), writs denied, 438 So.2d 572, 576 (La.1983), where Ward, twenty-four years after the *817 date of the agreement, filed suit seeking recognition of an ownership interest in certain immovable property. In that case, the parties had entered into an agreement wherein Pennington conveyed to Ward a one-half interest in a purchase agreement regarding certain immovable property. Id. at 1132. The court in Ward determined that any claims against Pennington had prescribed. Id. at 1138. Specifically, the court determined that the agreement was not sufficient on its own to convey an ownership interest (or real right) in the immovable property at issue; thus, any rights arising from the agreement were personal rights subject to a prescriptive period of ten years. Id.[5]
So it is in this case. We conclude that the Letter Agreement standing alone was not sufficient to transfer any of Midroc’s mineral leases to Kineade; thus, no real rights were ever conveyed to Kineade. At most, the Letter Agreement created Kin-cade’s right ultimately to enforce the agreement via, for example, a timely suit for specific performance in the event the condition of the Letter Agreement (i.e., Midroc acquired mineral leases) was satisfied. That did not occur here because Midroc, the partnership, had been dissolved as will be more fully discussed hereinafter. Additionally, under the same reasoning, any claim of Kineade for an assignment in the Carson # 1 Well prescribed ten years after the date of the Letter Agreement or certainly the date of dissolution of the partnership. Because the ^evidence establishes no basis for an ownership interest in any mineral leases,[6] we find that such claims are prescribed pursuant to La. C.C. art. 3499.

The Partnership Termination

Although not specifically addressed by the trial court, we additionally determine that due to the termination of Midroc shortly after the execution of the Letter Agreement, it was impossible for that partnership to have acquired any mineral leases following the date of its termination on August 1, 1977. La. C.C. art. 1773 states, in pertinent part: ‘Whether or not a time has been fixed, the condition is considered to have failed once it is certain that the event will not occur.” We conclude that upon the termination of Midroc as a legal entity in August of 1977, it became certain that the event which the Letter Agreement anticipated (i.e., Mi-droc’s acquisition of mineral leases in the Prospect) would not occur because Midroc no longer existed; therefore, the condition failed and the conditional obligation in the Letter Agreement became unenforceable.
Moreover, any obligations Midroc had under the Letter Agreement ended upon the termination of the partnership in August of 1977. There is no argument by the parties that the Midroc partnership, which was party to the Letter Agreement, terminated its existence on August 1, 1977, and there was no showing by Kineade that the termination of Midroc was in bad faith. *818 However, Kincade contends that although the entity which was a party to the Letter Agreement was terminated a short time after the agreement, the subsequent'Mi-droc entity, as well as Clark and Harris, individually, should also be bound by the Letter Agreement, 19meaning that Kincade would have a one-third ownership interest in any mineral leases obtained by those entities and/or individuals as well.
In support of his successor partnership argument, Kincade suggests that the subsequently formed Midroc partnership and/or Clark and Harris, individually, were successors in interest to Midroc and carried on its business after the termination, making them obligated under the Letter Agreement. However, the termination of the partnership ended its function as a business entity, except for liquidation purposes, pursuant to La. C.C. art. 2828, which states in pertinent part: “When a partnership terminates, the business of the partnership ends except for purposes of liquidation.” Here, the Midroc which was party to the Letter Agreement ceased to do “business” after August 1, 1977-other than for purposes of liquidation. There was little or no evidence presented at trial which tended to prove that the original Midroc partnership continued to do business.[7]
Kincade relies on the case of Heard v. Monroe Sand & Gravel Co., 9 La.App. 568, 121 So. 642 (2d Cir.1928), which we find to be inapposite to the facts in this case. In Heard, the defendant, Stephenson, individually entered into various leases with Mrs. Heard which had fifteen-year terms. Id. at 642. He later formed a corporation in which he was majority shareholder, president and general manager. Id. at 643. The corporation later breached the leases with Mrs. Heard. Id. The Court in Heard came to the “inescapable” conclusion from the evidence presented in that case that the subsequent corporation merely carried on the business begun by Stephenson, individually, and found the corporation bound under the leases. Id. at 645.
Loin this case, the evidence presented fails to lead to the inescapable conclusion that the subsequent Midroc entities and/or Clark and Harris continued the business of the Midroc which was party to the Letter Agreement. There was little, if any, evidence that the business of Midroc continued past August 1,1977.
Kincade further maintains that the termination of Midroc did not, in and of itself, extinguish the Letter Agreement, relying on various cases which he argues support the position that a terminated partnership maintains a fictional existence in order to perform existing contracts, among other functions.[8] Unlike the contracts at issue in those cases, which stated either definite terms and/or mutual or ongoing obligations of the parties, the Letter Agreement did not state a definite term. Most importantly, the Letter Agreement did not obligate Midroc to actively solicit and acquire additional mineral leases, which was an opinion admitted by Kincade’s expert at trial as well as a conclusion of law by the district court conceded by the appellants.
Finally, Kincade argues that Midroe’s termination was ineffective as to Mr. Kin-cade, because he did not receive notice of *819 the termination. He cites two cases in support of this proposition, both of which can be distinguished from this case on their facts.
In Thermal Supply of Louisiana, Inc. v. Sumter, 452 So.2d 312 (La.App. 2d Cir.1984), the particular facts were of importance in this court’s previous finding which required notice to the innocent third party. In that case an individual was conducting business under the guise of a former company to the detriment of an unsuspecting creditor. Notably, there were “subsequent engagements” with a Inthird party creditor who was under the impression it was dealing with the original company. Id. at 313. That belief was detrimental to the third party creditor, and the court determined that the original company was liable for the debts of the subsequent company for failing to adequately notify the creditor of its termination. Id. at 315.
Here, the facts are easily distinguished from Thermal Supply, supra, where an individual was conducting business under the guise of a former company to the detriment of an innocent third party creditor. Kincade is not an innocent third party creditor. In this case there was no evidence that a former Midroc partner was transacting business under the guise of the partnership with an unsuspecting Kincade. Neither were there ongoing transactions under the Letter Agreement between a former Midroc partner and Kincade. The Letter Agreement simply was executed, with no obligation on the part of Midroc to secure mineral leases or drill wells, the partnership was subsequently terminated, and the parties went along their respective ways, so much so that Kincade did not even inquire into the status of the Letter Agreement until 1988 after a chance encounter with Harris. There were no subsequent dealings between Kincade and Clark and/or Harris which may have led Kincade to believe that Midroc was still in existence. Moreover, the termination of Midroc was not necessarily to Kincade’s detriment because there was no ongoing obligation on Midroc’s part in favor of Kincade. The cited cases do not persuade us that as a blanket rule, a terminating partnership is required to provide notice to any and all parties it ever contracted business with in the past if there is no ongoing affirmative obligation to act on the part of the terminating partnership. We, therefore, conclude that, considering the particular facts of this case, Kincade’s position on this point is without merit.
Therefore, we conclude that upon the termination on August 1, 1977 of the Mi-droc partnership which was party to the Letter Agreement, that partnership was |12no longer conducting business and obviously could not acquire mineral leases in its name, thereby making the Letter Agreement unenforceable. Additionally, any mineral leases acquired by subsequent entities involving Clark and/or Harris, along with other partners and/or shareholders, as well as Clark and Harris, individually, were not subject to the Letter Agreement as they were not parties to the contract. We also note that a claim against Clark and/or Harris, individually, for their virile share of the partnership’s debts or obligations is clearly a personal right subject to a ten-year prescriptive period and certainly this claim not filed until 1995 is untimely.

Other Issues

Thus, because we determine that Kin-cade’s claims under the Letter Agreement are prescribed and that the Letter Agreement did not extend to obligate subsequent entities or Clark and Harris, individually, it is unnecessary to address the issues raised by Kincade in his first and second assignments of error regarding the Letter Agreement’s interpretation.

Conclusion

Accordingly, for the foregoing reasons, the judgment below is affirmed at Kin-cade’s costs.
AFFIRMED.

. The partnership had been created on April 1, 1976, and in addition to the named defendants, Clark, Harris and Ed Paramore, had as its partners, Roy Guffey, William R. Guffey and Russell Guffey. Roy Guffey was the named Managing Partner.

. Paramore is not an appellee in this appeal.

. Kincade alleged that Midroc received cash profit and mineral rights arising out of the Area of Interest. Harris and Clark admitted that they, along with the former partners of Midroc, owned a portion of a well in the Area of Interest (the "Carson # 1 Well”) which has been in production since April, 1982. Their ownership interest was never actually as *816 signed or transferred to Midroc. However, Harris and Clark admitted their failure to make an assignment to Kincade, which they claimed was due to inadvertence.

. La. C.C. art. 3499 provides as follows: "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.”

. In related litigation following the First Circuit's opinion in Ward, supra, Ward filed a new action stemming from the same facts, claiming that the judgment against him in the first suit had been obtained by fraud and ill practices. On that issue, the litigation made it to the Louisiana Supreme Court. See Ward v. Pennington, 523 So.2d 1286 (La.1988). In its decision, the Supreme Court reexamined the facts of the original lawsuit, and in dictum, recognized that the agreement at issue in the original suit was "not translative of title.” Id. at 1290. Denying Ward's claims of fraud and ill practices, the original judgment was ultimately upheld.

. Notably, although Kineade alleged an ownership interest in any mineral leases acquired by Midroc, Clark and/or Harris, he failed to prove that as of the time of trial, the defendants actually owned any mineral rights other than those admittedly owned by Clark and Harris in the Carson # 1 Well. Although Kin-cade introduced at trial a map of the Area of Interest which purported to show the various wells drilled in the area by Midroc, the district court recognized the map solely as Kin-cade's "[Pjerception of the wells and his interpretation of those agreements....” The record, therefore, fails to reveal conclusively that the original Midroc partnership, or Clark and/or Harris for that matter, owned any mineral rights other than the admitted well.

. For example, paragraph 21 of Midroc's April 1, 1976 Partnership Agreement provides a specific means for the remaining partners of the dissolved partnership to "continue the Partnership business” upon dissolution. There was no evidence that such actions to "continue the Partnership business” were undertaken by the remaining partners of Mi-droc.

. See Shank-Jewella v. Diamond Gallery, 535 So.2d 1207 (La.App. 2d Cir.1988), where the partnership had entered into a two-year lease and the partner continuing the partnership as a sole proprietorship assumed all partnership obligations and agreed to indemnify the withdrawing partner for any loss or damage arising from those obligations; Edco Properties v. Landry, 371 So.2d 1367 (La.App. 3d Cir.1979), writ denied, 375 So.2d 945 (La.1979), where it was determined that the lease-option agreement remained an asset of the dissolved partnership with the right of enforcement going to the subsequent entity.