JETTE PRITCHARD, Appellant

v.

AMERIKA SAMOA BANK and DEVELOPMENT
BANK OF AMERICAN SAMOA, Appellees

RON PRITCHARD, Appellant

v.

AMERIKA SAMOA BANK and DEVELOPMENT
BANK OF AMERICAN SAMOA, Appellees

High Court of American Samoa
Appellate Division

AP No. 2-88
AP No. 3-88

October 21, 1988

Before KING\*, Acting Associate Justice, KAY\*\*, Acting Associate Justice, LUALEMAGA, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Appellant Ron Pritchard,
 Togiola T.A. Tulafono
 For Appellant Jette Pritchard,
 Roy J.D. Hall, Jr.
 For Appellee Amerika Samoa Bank,
 William Reardon
 For Appellee Development Bank of American
 Samoa, Steven H. Watson

These cases come before the Appellate Division on the appeals of Ron Pritchard ("Ron") in No. 03-88 and Jette Pritchard ("Jette") in No. 02-88 who were found by the trial court in CA No. 118-87 to be liable to the Amerika Samoa Bank ("ASB") and the Development Bank of American Samoa ("DBAS") on a guaranty which they executed to secure loans made to business enterprises which they controlled.

On August 1, 1984, ASB loaned $275,000 to Samoa Air, Inc. ("Samoa Air"), a Hawaii corporation. The loan was secured by the individual continuing guarantees of Ron and Jette, respectively the President and Secretary of the corporation. The loan was also secured by a loan guaranty from DBAS dated June 20, 1984, which guaranty was backed up by a certificate of deposit

---

\* Honorable Samuel P. King, Senior Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

\*\* Honorable Alan C. Kay, Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

("CD") with ASB in the amount of $300,000. It should be noted that Ron Pritchard was a director of ASB and had several businesses and several loans with ASB. The basic note was renewed more than once, the last renewal being on September 10, 1985, for 27 days, making the note due on October 7, 1985.

On February 25, 1985, Ron and Jette together signed a continuing guaranty in favor of ASB in the amount of $475,000. The form used by the bank had a blank space in which was to be inserted the name (or names) of the party (or parties) for whose indebtedness they agreed to be liable. This blank was never filled. On February 26, 1985, ASB loaned $200,000 to Ron Pritchard Ground Services, Inc. ("Ground Services") of which Ron and Jette were, respectively, the President and Secretary. This loan was secured by a continuing guaranty executed by Ron and Jette and a guaranty from DBAS, each in the amount of $200,000.

On July 15, 1985, Samoa Air filed for bankruptcy in Honolulu. Thereafter, and at a time when the Samoa Air loan and other obligations of Ron or his businesses were in default, ASB appropriated the CD for $300,000 and applied the proceeds to the $275,000 loan (with interest) and some other obligations of Ron or his many businesses. However, ASB has never formally assigned the underlying note of Samoa Air to DBAS.

ASB also sued Ron and Jette and Ground Services on the note and guarantees relating separately to the $200,000 loan. Default judgments were obtained against all parties, but the default against Jette was set aside. Collection of the judgments in that case is proceeding.

In this action ASB and DBAS are jointly suing Ron and Jette on the continuing guarantee of February 25, 1985 (in the amount of $475,000), but only in connection with the non-payment of the $275,000 loan. Why ASB did not seek to recover under the original guarantees for $275,000 does not appear in the record. Certain collateral which Ron had given to DBAS in connection with DBAS's guarantees on his behalf was liquidated by DBAS and the proceeds applied in part to reduce the amount due on the $275,000 loan.

159

The trial court found that Ron and Jette were jointly and severally liable in the amount of $292,783.01 under the February 25, 1985 guaranty, without specifying the amounts due to each of the two banks.

Ron and Jette argue on appeal that the $475,000 guaranty contract was unenforceable because the space on the form contract for the name of the principal debtor whose debt was to be secured had not been filled in. The trial court found that:

> [i]t is clear from all the evidence that the parties intended the February 25 guaranty in the amount of $475,000 to secure the preexisting $275,000 debt to Samoa Air and the $200,000 that was lent to Pritchard Ground Services the next day.

Findings of Fact, Conclusions of Law and Order at 2 [Development Bank of American Samoa v. Pritchard, 6 A.S.R.2d 125, 127 (1987)].

Ron contends that this conclusion is clearly erroneous and not supported by the evidence because none of the banks' witnesses testified that the guaranty was prepared and exercised in conjunction with the Samoa Air note. The circumstances surrounding the transaction, however, themselves lend credence to the court's conclusion. That the ASB would require certain collateral before making the loan to Ground Services is supported by the requirement of the DBAS guaranty and certificate of deposit to secure the initial loan to the other Pritchard-controlled company, Samoa Air. The second loan of $200,000 was made on the day following the execution of the guaranty in question. The sum of the two loans together equals the amount of the guaranty. Finally, no alternative explanation appears to have been given as to why Ron and Jette signed the guaranty to ASB.

Given that the trial court was in a position to judge the credibility of the witnesses and the circumstances under which the guaranty was executed, we conclude that the court's determination of the parties' intent was supported by substantial evidence and was not clearly erroneous.

160

Jette attacks the decision below on the basis that a guaranty contract which is missing an essential term is unenforceable as a matter of law. She does not cite any authority which specifically holds that the name of the principal debtor is an essential term which may not be implied or inferred from evidence beyond the four corners of the contract. For example, in <u>Citizens Fidelity Bank & Trust Co. v. Lamar</u>, 561 S.W.2d 326 (Ky. App. 1977), the court refused to enforce a contract, not because the one term was omitted from the written agreement, but because the "guarantors" had been persuaded by a tax-shelter peddler to sign completely blank guaranty agreement forms with no date, no principal name, and no amount. On that record the court found no meeting of the minds.

Jette also relied on <u>Nevada State Bank v. Snowden</u>, 449 P.2d 254 (Nev. 1969), in which the trial court found that a guaranty agreement which was missing the name of the principal debtor and a date was "substantially incomplete." However, because the court rested its resolution of the case on a different issue, it did not address whether parol evidence was available to fill in the gaps. And again in <u>Azoulay v. Cassin</u>, 512 N.Y.S.2d 900 (App. Div. 1987) the court looked at the circumstances and determined that there was insufficient evidence of the parties' intent to fill in terms of an oral partnership agreement. <u>Nu-Lite Electrical Wholesalers, Inc. v. Deckard & Treadaway Electric Air Conditioning & Refrigeration</u>, 498 So. 2d 120 (La. App. 1986), relied on a Louisiana statute requiring contracts of guaranty to be in writing to find a guaranty contract which was missing the name of the principal obligor unenforceable. American Samoa does not have an equivalent statute.

Lastly, both Ron and Jette argue that at best the contract was ambiguous, and any ambiguity in such a form contract should be resolved against the drafter and in favor of the guarantors. See <u>Inter-Sport, Inc. v. Wilson</u>, 281 Ark. 56, 661 S.W.2d 367, 368 (1983). However, the court did not find that the contract was ambiguous: rather, it found that the intentions of the parties were clear but that there had apparently been a clerical error in reducing the terms to paper. Therefore, the rules which govern resolution of ambiguous terms do not apply here.

Ron next makes what appears to be a standing argument. This issue may be improperly raised on appeal, as there is no indication that it was ever raised below. However, since neither of the appellee banks raises this objection, we will assume for present purposes that the issue is rightfully before this court.

The trial court held that "defendants are liable to one of the plaintiffs for all amounts still due on the loan," apparently because it was not clear which of the banks was entitled to the money. ASB wrote off the loan on their books and seems to have done so without any formal transfer of the documents to DBAS, whose $300,000 certificate of deposit ASB cashed upon the default. The trial court held that, if ASB had rightfully appropriated the certificate of deposit then DBAS was subrogated to ASB's rights against Ron and Jette. If not, then ASB owes DBAS the $300,000 and therefore had not been made whole with respect to the Samoa Air indebtedness.

Ron argues that because the $275,000 obligation had been satisfied, presumably by the certificate of 'deposit, ASB had no claim and therefore was an improper party. He also claims that DBAS could not sue because American Samoa precludes the assignment of a "chose in action." As at least one of the plaintiffs to this suit clearly had standing, the addition of another plaintiff of more questionable status should not necessitate reversal. The two appellees can contest between themselves who is entitled to how much of the judgment award.

Ron Pritchard appeals from the court's award of 12.5% post-judgment interest. Although A.S.C.A. § 28.1503 authorizes a rate of 18% for commercial or business lending, Ron contends that 12.5% is usurious as charged against an individual such as himself. However, this was clearly a business transaction. Even if it were a non-business loan, the statutory maximum rate of interest for such loans is 15%. However, the last renewal of the $275,000 note calls for interest of 12.5% only "until maturity." The statutory rate where no interest is specified is 6% per A.S.C.A. § 28.1501. Thus, the rate of interest on the note after maturity cannot exceed 6%. Appellee acknowledges this proposition, citing <u>Turner Coleman, Inc. v. Ohio Construction and Engineering, Inc.</u>, 251 S.E.2d

738 (S.C. 1979), for the proposition that the statutory rate of interest on money judgment or decrees is applicable only in the absence of a written agreement between the parties fixing a different rate of interest. Here there was no written agreement between the parties fixing any rate of interest after maturity. Also, the last renewal of this note on September 10, 1985, is in the exact amount of $275,000. Presumably, all previous interest had been paid in full. Thus no interest is due under the renewal note for periods prior to September 10, 1985.

The matter is remanded to the trial court for recalculation of interest due consistent with this opinion.

In all other respects, the judgment of the trial court is AFFIRMED.